ANTON SCHEFFLER, Administrator, *vs.* MINNEAPOLIS & ST. LOUIS
RAILWAY COMPANY.

December 8, 1884.

**Action for Injuries causing Death—Damages, how Computed.**—In an
action for the next of kin, under Gen. St. 1878, *c.* 77, § 2, on account of
the death of a person, damages are to be computed with reference to the
reasonable expectation of pecuniary benefit from the continuance of the
life of the deceased.

**Same—Probable Duration of Life.**— The probable duration of life is a
proper element to be considered in estimating damages in an action un-
der the statute before cited.

**Evidence—Carlisle Tables—Judicial Notice.**—The Carlisle and other sim-
ilar tables, offered for the purpose of showing the "expectation" or prob-
able duration of life, are to be received (if at all) upon judicial notice of
their genuineness and authoritativeness. No legal proof of genuineness
or authoritativeness is required, but it is proper for a court to inform it-
self in the premises by reference to books or other sources of information.
Such tables are not conclusive, but their value in a given case is largely
analogical. They must speak for themselves, and not by the mouth of a
witness merely testifying to their contents.

**Duty of Railroad Company to Trespasser on Track.**—A railroad com-
pany does not owe a mere trespasser upon its track the duty of having
an engineer running a train look to see if he is there; but if, after hav-
ing seen him, the engineer does not exercise proper care to avoid striking
him, the company is liable for the consequences.

Plaintiff, the father and administrator of Anton Scheffler, a child 18
months old, brought this action (under Gen. St. 1878, *c.* 77, § 2) to
recover $5,000 damages sustained by the next of kin of the intestate,
in consequence of his death, which was caused, as alleged in the com-
plaint, by the defendant's negligence. A former action by the same
plaintiff for his damages by reason of the loss of his child's services
is reported *supra*, p. 125. The complaint alleges that the deceased
had always from the time of his birth been in good health and free
from any bodily infirmity, and that at the time of his death he had
an expectancy of a life of forty years after his majority.

At the trial, in the district court for Scott county, before *Macdonald, J.,* the plaintiff, to prove his intestate's expectancy of life, called one Bornarth, a fire insurance agent and city justice of the city of Shakopee, who produced a printed book which, he stated, purported to be a copy of the Carlisle tables, and was thereupon asked, "What is the expectancy of life of a healthy young man of 21 years?"—and, against defendant's objection and exception, answered "Forty and 74-100 years by these tables." Other exceptions taken are stated in the opinion. The plaintiff had a verdict for $800 damages, a new trial was refused, and the defendant appealed.

*H. J. Peck,* for appellant.

*L. M. Brown,* for respondent.

BERRY, J.   Under Gen. St. 1878, c. 77, § 2, the plaintiff, as administrator, brings this action to recover damages for the death of his son (18 months old) through the alleged negligence of defendant's locomotive engineer.   Owing to the fact that another action was pending to recover for the loss by the plaintiff, as *father,* of the services of the deceased up to the age of 21 years, (see *Scheffler* v. *Minn. & St. L. Ry. Co., ante,* p. 125,) only such damages were claimed on the trial of the present action as would accrue to the plaintiff as next of kin by reason of the loss of such pecuniary benefits as he might (had his son lived) have received from him *after* his arrival at the age of 21 years.   In this somewhat singular condition of things, the court, with reference to the amount of damages, after adverting to the fact that nothing was claimed for the time previous to 21, instructed the jury that the question for them to determine was "what a person in his (the deceased child's) condition of life would have accumulated, (and that you can judge of by the parents, and the manner in which they were living;) the amount which he would be likely to have accumulated over and above all expenses during life.   Assuming that he would have lived that number of years," (meaning 40, which was testified to be the expectation of life of a person 21 years of age,) "and had been a person of good health, what he would have been likely to have earned over and above his expenses, which would be in the nature of an accumulation that might have passed to his next of kin.   They are the parties that represent his estate, and it

would belong to them, and is all that can be included in it," (meaning, as we understand, in the damages.)    This was followed by an instruction that the damages must be of the character "already stated" to the jury, and "such only as would be acquired after this child had arrived at the age of 21 years."

Damages in an action of this kind are to be computed in reference to the reasonable expectations of pecuniary benefit from the continuance of the life of the deceased.    *Shaber* v. *St. Paul, M. & M. Ry. Co.*, 28 Minn. 103; *Opsahl* v. *Judd*, 30 Minn. 126.    The instructions quoted go far beyond this rule.    They virtually direct the jury to find damages to the amount of all the "accumulations," over and above expenses, which the deceased would probably have made for 40 years after he became 21 years of age; the probable amount of such accumulations to be judged of by reference to his parents and their mode of living.    That this would not be an estimate or computation of damages in reference to the plaintiff's reasonable expectation of pecuniary benefit from the continuance of his son's life, is apparent upon the least reflection.    Any estimate of the pecuniary benefit which will be derived by the next of kin from the continuance in life of a child who dies at the age of 18 months must be little, if any, better than mere guess-work; yet the statute appears to authorize an action even in such a case; but an estimate upon the basis that the child will turn over to his next of kin all his accumulations over expenses would violate all probabilities.    For the error of these instructions there must be a new trial, in view of which we will briefly advert to one or two other errors apparent upon the record.

The child being a trespasser upon defendant's track, it was wrong to instruct the jury, as the court in effect did, that if, notwithstanding the child was upon the track through the carelessness of his mother, who had charge of him, yet, if he was "upon the track in such a way that the engineer could have seen" him, and by the exercise of proper care have avoided striking him, the defendant would be liable. The defendant did not owe the child—a trespasser—the duty of having its engineer look to see if he was upon the track, and therefore the fact that the engineer *could* have seen him if he had looked, does not make the company liable.    If the engineer had seen him, and

then had not exercised proper care to avoid striking him, there would have been a different case.  *Locke* v. *First Div., etc., R. Co.,* 15 Minn. 283, (350.)

With reference to the admission in evidence of the Carlisle and other similar tables for the purpose of showing the "expectation" and probable duration of life, we think that they are to be received upon judicial notice of their genuineness and authoritativeness.  As in regard to many other matters of which judicial notice is taken, it is proper for a court to inform itself in the premises by reference to books and other sources of information; but legal proof of such genuineness and authoritativeness is not required.  In a given case it is for the court to say, without such proof, that they are or are not genuine and authoritative, and that they are or are not admissible accordingly.  Stephen, Ev. art. 59, and note; 1 Greenl. Ev. § 6.  Such tables are, however, not conclusive, for there is not only a considerable variance in different tables, but they are not so compiled as to show the probable duration of life under any and all circumstances, but under particular conditions, so that their evidentiary value in a given case is largely analogical.  This will be more apparent upon reference to what is said of such tables in *Williams' Case,* 3 Bland, Ch. 186.

As in case of other documentary evidence, they must speak for themselves, and not by the mouth of a witness testifying to their contents.  *Donaldson* v. *Mississippi & M. R. Co.,* 18 Iowa, 280.

And the probable duration of life is a proper element to be considered in estimating damages in an action of this character.  But in this case the question was not, as appears to have been supposed, what was the expectation of life of a person 21 years of age, but what was the "expectation of life" after the age of 21 years, of a person 18 months old.  *Walters* v. *Chicago, R. I. & P. R. Co.,* 41 Iowa, 71.  In the latter case the expectation is less than in the former.

As the case goes back for a new trial, and, as we imagine, upon a somewhat different basis than before, we pass the other matters alleged as error as not likely to occur again.

Order reversed, and a new trial awarded.