FRED. M. STUDLEY, as Administrator, etc. *vs.* ST. PAUL & DU-
LUTH R. Co.

| 48 | 249 |
| 81 | 386 |
| 81 | 418 |

Argued Dec. 23, 1891.    Decided Jan. 21, 1892.

**Contributory Negligence—Duty to Look and Listen at Crossing.**—In
an action to recover damages for the killing of plaintiff's intestate—a
girl aged 17—by one of defendant's railway trains, it is *held*, if the girl
was struck by defendant's locomotive at the crossing of a public high-
way, as was alleged in the complaint, that the evidence showed contrib-
utory negligence, in that the girl did not look or listen before going upon
the track, or, if she did, that she recklessly disregarded knowledge which
she must have obtained as to the coming train.

**Same—How Affected by City Ordinance Limiting Speed of Trains.—**
A traveler has no right to attempt to cross a railway track in front of
an approaching train at what is nothing more than a common country
crossing, although it is within the limits of a city, or to use a part of the
railway within said limits as a footpath, relying solely upon the expecta-
tion or belief that the trains will be run not to exceed a certain rate of
speed fixed by city ordinance.

**Trespasser, Injury to—Company, when Liable for.**—Upon the claim
made by defendant that from the evidence it appeared that plaintiff's
intestate was a trespasser upon its tracks when struck by the locomotive,
the court charged that, if the jury should so find, a recovery could not
be had by plaintiff, unless it was also found that the engineer in charge
saw her in time to have avoided the accident, and was then guilty of
gross negligence in not attempting to avoid a collision, such as would
evince a reckless disregard of human life.    *Held* correct.

Appeal by plaintiff, Fred. M. Studley, administrator of the estate
of Mary Kneasey, deceased, from an order of the district court of
Ramsey county, *Wilkin*, J., made November 19, 1890, refusing a
new trial.

This action was brought under 1878, G. S. ch. 77, § 2, to recover $5,000, damages for the negligent killing of Mary Kneasey, June 20, 1887, on defendant's railroad track near the southeasterly end of Lake Phalen, within the corporate limits of the city of St. Paul. The action was tried before a jury, May 15, 1888, and a verdict rendered for the defendant. A motion was made September 8, 1888, by plaintiff for a new trial for errors in law occurring at the trial, and excepted to by him. This motion was denied November 19, 1890, and he appealed.

Deceased was a servant girl at work at the residence of Mr. McIntire, situated on the east shore of the lake, and between it and the defendant's railroad track. There is a marsh at the southeast extremity of the lake, and the highway from McIntire's residence runs southeasterly across the railroad track and around the marsh, and then to the southwest, across the railroad again. The railroad runs nearly north and south, and crosses the marsh close to the point of the lake.

The complaint alleges that at 4 o'clock in the afternoon deceased approached the north crossing from the westerly side, and looked up and down the railroad, and then went upon the track at the crossing; that immediately a locomotive and passenger train coming from the north struck and killed her.

On the trial plaintiff offered to prove that the railroad between the two highway crossings had for a long time been much used and traveled by people on foot, who daily and hourly passed back and forth along the railroad track between these two crossings. This was excluded, and plaintiff excepted, and this matter is his third assignment of error in this court.

In charging the jury, Judge Wilkin said: "It is necessary, in order to recover, that it should appear that there was no contributory negligence on the part of the deceased; no negligence on her part that contributed to the injury." Plaintiff excepted to this part of the charge, and the judge immediately told the jury before they retired that "the burden of proof is not upon the plaintiff in the first place to show that she was not guilty of contributory negligence. That is a matter to be made out by the defendant, unless it appears from the

plaintiff's own testimony (as it sometimes does) that she was guilty of contributory negligence." This matter was plaintiff's fourth assignment of error mentioned at the close of the opinion.

*Henry C. James*, for appellant.

The court erred in excluding the evidence that the company had no crossing sign at the north crossing at the time of the accident, and that some three weeks later they put a sign there. *Shaber* v. *St. Paul, M. & M. Ry. Co.*, 28 Minn. 103; *Kelly* v. *Southern Minn. Ry. Co.*, Id. 98.

The court should have received the evidence of the travel on the railroad between the crossings. *Mark* v. *St. Paul, M. & M. Ry. Co.*, 32 Minn. 208; *Western & Atlantic Railroad* v. *Meigs*, 74 Ga. 857; *Townley* v. *Chicago, M. & St. P. Ry. Co.*, 53 Wis. 626; *Davis* v. *Chicago & N. W. Ry. Co.*, 58 Wis. 646.

The error in charging the jury was not cured by the later charge, which merely states upon whom the burden of proof is, but does not withdraw the rule as given first, that it must appear that there was no contributory negligence. *Philadelphia & T. R. Co.* v. *Hagan*, 47 Pa. St. 244; *Thompson* v. *North Missouri R. Co.*, 51 Mo. 190.

The ordinance of the city of St. Paul, admitted by the pleadings and in evidence, provides that no railroad company shall run a locomotive or train of cars within the limits of the city of St. Paul at a greater speed than 4 miles an hour, nor without having and ringing a bell at all times while so in motion. This train was going very fast, at any rate 20 miles an hour, perhaps 50, over a crossing much traveled, and within the city limits of St. Paul, where the ordinance forbade running faster than 4 miles an hour. This made out a case for the jury, if they should find that the accident occurred on the northern or upper crossing. But the court instructed the jury that if they found that the deceased was killed on this upper crossing the plaintiff could not recover, and exception was taken. *Shaber* v. *St. Paul, M. & M. Ry. Co.*, 28 Minn. 103, 109; *Siegel* v. *Milwaukee & N. R. Co.*, 79 Wis. 404; *Beanstrom* v. *Northern Pac. R. Co.*, 46 Minn. 193; *Pennsylvania R. Co.* v. *Weiss*, 87 Pa. St. 447; *Remer* v. *Long Island R. Co.*, 36 Hun, 253.

The plaintiff had a right to expect that the defendant would ob-

serve and was observing the law as to speed. *Langhoff* v. *Milwaukee, etc., R. Co.*, 19 Wis. 489; *Jetter* v. *New York & H. R. Co.*, 2 Abb. Ct. App. Dec. 458; *Piper* v. *Chicago, M. & St. P. Ry. Co.*, 77 Wis. 247; *Newson* v. *New York Cent. R. Co.*, 29 N. Y. 383; *Pennsylvania R. Co.* v. *Ogier*, 35 Pa. St. 60, 72; *Petty* v. *Hannibal & St. J. Ry. Co.*, 28 Amer. & Eng. R. Cas. 618.

It is not necessary to prove affirmatively that a person injured when crossing a railroad on a public highway had stopped and looked up and down the railroad; whether he used proper precautions is to be determined by all the circumstances of the case. If a man be found dead on a railroad where it crosses a street, having been killed by a train of cars, whether he was lawfully on the railroad, and whether his own negligence contributed to his death, are for the jury. *Lehigh Valley R. Co.* v. *Hall*, 61 Pa. St. 361; *Weiss* v. *Pennsylvania R. Co.*, 79 Pa. St. 387; *Schum* v. *Pennsylvania R. Co.*, 107 Pa. St. 8; *Beisiegel* v. *New York Cent. R. Co.*, 34 N. Y. 622; *Thomas* v. *Delaware, L. & W. R. Co.*, 8 Fed. Rep. 729.

*Lusk, Bunn & Hadley*, for respondent.

Whether there was the usual sign at the road crossing or not is immaterial, for the deceased evidently knew of and saw the crossing. If she was struck at the crossing, she was guilty of contributory negligence, and the defendant's neglect to put up a crossing sign cuts no figure. If she was struck while walking the track between the crossings, she was a trespasser, and gross or wanton neglect of the company must be shown after the engineer discovered her.

The court below followed the settled rule of this court, in charging that plaintiff could not recover if the deceased was struck on the crossing. The case is the ordinary one, many times decided in this court, of a traveler going onto a railroad crossing, where it is plain that, if he had looked each way, he could not have been injured. *Brown* v. *Milwaukee & St. P. Ry. Co.*, 22 Minn. 165; Whart. Neg. §§ 382–384; *Smith* v. *Minneapolis & St. L. Ry. Co.*, 26 Minn. 419; *Abbett* v. *Chicago, M. & St. P. Ry. Co.*, 30 Minn. 482; *Rheiner* v. *Chicago, etc., Ry. Co.*, 36 Minn. 170.

The court charged that, if the deceased was walking the track, the company was not liable unless the jury found that the engineer saw

her in time to avoid the accident, and was guilty of such gross negligence in not trying to avoid a collision as to evince a reckless disregard of human life.   This charge was correct in point of law. *Scheffler* v. *Minneapolis & St. L. Ry. Co.*, 32 Minn. 520 ; *Philadelphia & R. R. Co.* v. *Spearen*, 47 Pa. St. 300, 304; *Schittenhelm's Adm'x* v. *Louisville & N. R. Co.*, 19 Amer. & Eng. R. Cas. 111; *Johnson* v. *Boston & M. R. R.*, 125 Mass. 75.

The deceased was clearly guilty of contributory negligence in walking the track, and cannot recover unless the defendant was guilty of willful, wanton, or reckless negligence.   *McAdoo* v. *Richmond & D. R. Co.*, 41 Amer. & Eng. R. Cas. 524; *Roden* v. *Chicago & G. T. Ry. Co.*, 133 Ill. 72; *Barstow* v. *Old Colony R. Co.*, 143 Mass. 535; *Sutton* v. *New York Cent. & H. R. R. Co.*, 66 N. Y. 243.

COLLINS, J.   The plaintiff's intestate—a girl aged 17 years, in full possession of her faculties—was struck by one of defendant's locomotives drawing a passenger train, in daylight, and within the limits of the city of St. Paul, receiving injuries which caused her death. She was accustomed to being about railway tracks and trains, and for about one month prior to the accident had been employed at a house situated within 300 feet of the place where it occurred.   The public highway, which at this point was nothing more than a country road, went around a small marsh, and within a distance of 1,100 feet was crossed twice by the railway.   There was some question as to just where the girl was when struck,— one witness for the plaintiff testifying that she was upon the northerly crossing,—the one nearest the house in which she was employed; while the engineer and fireman both stated that she had left the road, and was walking southerly along the berme of the roadbed and between the crossings, presumably to shorten the journey she was making to the city on foot.   And from facts and circumstances appearing on the trial, about which there was no contention, it would seem quite certain that the witness first mentioned was mistaken as to location, and that the girl must have been overtaken while between the crossings, and a trespasser upon the defendant's right of way.   There was no sign at the northerly crossing, but under the circumstances this was of no moment.   The young woman knew, undoubtedly, of the existence of

the railway at the precise point, and therefore had all the information which would have been conveyed by the usual sign. Having this information, no matter how obtained, she was bound to approach the crossing—a place of well-known danger—with care. She was warned by her knowledge of the place to be vigilant to the extent of her opportunity in the use of her eyes and ears to observe a coming train in time to avoid it. It was undisputed in this case that the right of way—100 feet wide—was unobstructed, and that when a person approaching the crossing was 70 feet distant from the rails the track could be easily seen for about one mile in a northerly direction. Now, when this girl came within 70 feet of the rails she could have easily seen the train in question, then but a few hundred feet away, had she looked. It would then be in plain sight, and not a single thing intervened or prevented her from observing its swift approach; and this opportunity for seeing and hearing continued unimpaired as she walked towards the rails,—a period of perhaps one minute. When she was near by, say 5 or 6 feet distant, at a point where she could have stopped and remained in comparative safety while the train passed, it could not have been more than 50 or 60 feet away. Assuming, then, that the accident happened at the northerly crossing, and not while she was a trespasser; that the bell was not rung, nor the whistle seasonably sounded, (and on these points the preponderance of the evidence was decidedly with the defendant,)—the failure of Miss Kneasey to both see and hear the train, if such was the fact, in time to avoid injury, seems incomprehensible. It must be assumed that she did not look or listen as she came to this place of danger, or that the knowledge of the proximity of the train, which she must have obtained by the use of her senses, was recklessly disregarded. In either case she directly contributed to the negligence complained of as attributable to defendant, and the court below was fully justified in charging the jury that, should they find that the girl was struck at the crossing, their verdict should be for defendant. On this branch of the case see *Abbett* v. *Chicago, M. & St. P. Ry. Co.*, 30 Minn. 482, (16 N. W. Rep. 266;) *Carney* v. *Chicago, St. P., M. & O. Ry. Co.*, 46 Minn. 220, (48 N. W. Rep. 912;) *Clark* v. *Northern Pac. R. Co.*, 47 Minn. 380, (50 N. W. Rep. 365.)

We do not indorse the doctrine, if it anywhere exists, that a person may attempt to pass in front of a coming train at what is nothing more than a country crossing, relying solely upon a belief or on the expectation that the train will approach at a certain rate of speed.

The negligence relied upon by plaintiff, according to the complaint, was in running the defendant's locomotive and cars over the northerly crossing without ringing the locomotive bell and without sounding the whistle, and at a speed of 30 miles an hour, in violation of an ordinance of the city, which prohibited the running of locomotives within the city limits without ringing the bell, or at a greater rate of speed than 4 miles an hour. It was also alleged in the complaint that the deceased was struck while upon the highway at the crossing. The answer took issue with the complaint on these allegations, admitted the existence of the ordinance, but averred that, as to the locality in question, it was unnecessary, unreasonable, and void. It briefly asserted also that Miss Kneasey was a trespasser upon its road when injured, and that these injuries were the result of her own negligence entirely. Upon the trial the plaintiff attempted to shift his position, and to recover because of alleged negligence in the management of the train after the engineer in charge saw his intestate as she was walking from one crossing to the other.

The appellant's third assignment of error is directed to the refusal of the court below to permit him to show that the railway between these crossings had for a long time prior to the accident been used and had been hourly and daily traveled over by people on foot. Without stopping to consider the sufficiency of the offer made by appellant's counsel, and whether it was broad enough to be of any value, it can be said that the proposed testimony was clearly inadmissible under the pleadings. The issue was as to the negligence of the defendant company, and of the person, also, who was injured, at the crossing; and none had been tendered as to negligence elsewhere, or as to the existence of a custom, amounting to a license by implication, for the public to use the roadbed as a footpath at this particular place, and hence the necessity, perhaps, of more care and circumspection upon the part of defendant's employes when approaching it with a locomotive. Had the matter involved in this offer been

gone into, another and very important issue would have been injected into the case without the slightest suggestion of it in the pleadings. The court ruled correctly when excluding the proposed testimony.

From the testimony of the engineer and fireman it appeared that plaintiff's intestate was seen by them some distance ahead upon the track, and, as we understand it, she was then between the crossings. This was when the whistle was sounded for the northerly crossing. The engineer stated that when he blew the whistle the girl turned her head towards him, apparently gazing at the train, and that he assumed that she saw it, and would turn aside. Just before going over the crossing he discovered that she was in danger, at once used the air brakes, and repeatedly blew a warning whistle. He stopped as soon as possible, but she was struck by the pilot beam of the locomotive at least 125 feet south of the northerly crossing. It was conceded that the train was running at 20 miles an hour when the engineer first noticed that Miss Kneasey was paying no attention to it, but, aside from the ordinance, there was nothing in the case tending to show that this rate of speed was unusual or unreasonable. It was urged by plaintiff, upon the claim made by defendant that the injuries were inflicted while the girl was walking between the crossings, that he was entitled to recover on the ground that the engineer was grossly negligent in running his train at a prohibited rate of speed, and also in not attempting to stop when he first saw her upon the roadbed. When submitting this branch of the case to the jury the court charged that a recovery could not be had by plaintiff unless the engineer saw the girl in time to avoid the accident, and then was guilty of such gross negligence in not trying to avoid it as to evince a reckless disregard of human life; and of this complaint is made through one of the assignments of error. This language was fully justified by the authorities, and was merely another way of stating that a recovery could not be had unless it appeared that the engineer was willfully, wantonly, or intentionally negligent in the management of his train after discovering that Miss Kneasey was in danger. The latter form of stating the law applicable to a case where a trespasser upon a railway track has been injured or killed has been approved in this state repeatedly, and its correctness is beyond question.

*Johnson* v. *Truesdale,* 46 Minn. 345, (48 N. W. Rep. 1136,) and citations. The defendant's engineer was under no obligation to anticipate a trespasser, or to look out for persons walking upon the track; but, upon discovering plaintiff's intestate across the cattle guard, as he claims she was when he noticed that she was in danger, it became the engineer's duty to use proper care to avoid running her down. If he failed to exercise proper care, he would necessarily be grossly negligent, and evince a reckless disregard of human life. In other words, his conduct would be characterized as willfully or wantonly, or, possibly, intentionally, negligent. Of course, in the exercise of proper care reference must be had to the situation and circumstances. For illustration, much prompter action and greater care would be required of an engineer who discovered a small child on the track ahead of him—as was the case considered in *Scheffler* v. *Minneapolis & St. L. Ry. Co.,* 32 Minn. 518, (21 N. W. Rep. 711)—than where the circumstances are similar to those now before us. In the one case the trespasser is a child, incapable of realizing its perilous situation, or of taking care of itself; in the other, an adult, evidently in possession of all the senses, and who had, according to the testimony, indicated that she realized the approach of the train by turning her head towards it when the whistle was sounded for the crossing. Proof that the train was running at an unreasonable rate of speed, or faster than was permitted under the ordinance, might be evidence of defendant's negligence,—see *Faber* v. *St. Paul, M. & M. Ry. Co.,* 29 Minn. 465, (13 N. W. Rep. 902,)—but would not relieve the person injured of the charge of having contributed to the deplorable result. If a person cannot be permitted to rely solely upon the expectation or belief that a train will cross a highway or approach a station at a certain rate of speed, it is very evident that he cannot be allowed to go upon the railway for the purpose of using it as a footpath, depending or relying on a like expectation or belief. The extremely hazardous act of walking upon a railway track cannot be justified or excused by saying that he who goes into such a dangerous place has a right to assume that an approaching train will be run at a prescribed rate of speed, and therefore that he supposed a point of safety could be reached before it came along. The language of the court

when charging the jury, complained of by the fourth assignment of error, was corrected in due season, and the plaintiff could not have been prejudiced by it.

Order affirmed.

(Opinion published 51 N. W. Rep. 115.)