CHARLES S. TROTT v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Contributory Negligence**: ASSUMPTION OF RISK: *Jury question.* Plaintiff, a brakeman, attempted to uncouple two cars with a lever provided for the purpose; but the coupling was out of order, and he could not thus draw the pin. He attempted to draw it with his hand and while walking between the moving cars his foot was caught between the rail and an unblocked guard rail, whereby he was injured. *Held,* that plaintiff's contributory negligence, or assumption of risk incident to the condition of the gaurd rail, was a question for the jury.

INSTRUCTIONS. Under these facts, the instruction, "was defendant negligent in leaving said space open and unblocked, and of such width that an employe's foot might be caught and held by it long enough to sustain injury from a train in motion," is not objectionable for omitting to mention defendant's negligence as to the coupling; this being an incident to, and not the proximate cause of, the injury.

*Future earning power.* In a suit by a servant for personal injuries, an instruction that "you will consider the extent to which plaintiff's earning power as a laboring man, would be lessened

and diminished by the character and nature of his injuries" is erroneous, as limiting his future earning power to manual labor.

*Stating ultimate facts in issue.* Where a petition in a suit by a servant for personal injuries alleges, in detail, facts from which ulitmate facts constituting the cause of action appear, instructions following the petition in detail, or devoted to issues withdrawn from the jury's consideration, instead of stating the ultimate facts alleged, are objectionable, as tending to obscure the issues and confuse the jury.

EVIDENCE. Where a brakeman was injured in coupling cars by having his foot caught in an unblocked guard rail, evidence that there were numerous other rails at other points along defendant's road over which plaintiff had worked was inadmissible, since the condition of such guard rails would not be likely to be observed by brakemen passing on trains. See point 11.

*Hearsay.* Where a brakeman in a suit against a railroad for personal injuries testfied that his physician had advised another operation, and that the physician was too ill to appear at the trial, such evidence was incompetent, as hearsay, and prejudicial, as tending to enhance the damages for future pain and suffering.

*Life tables.* In a suit by a servant for personal injuries, an instruction that, "if you find for plaintiff, you will consider the age he would probably have reached if he had remained in good health, as ascertained by the tables of the expectancy of human life introduced in evidence," is erronious as making the life tables conclusive as to the "age he would probably have reached," whereas such tables are only evidence thereon.

*Opinions.* Where a brakeman was injured in coupling cars by having his foot caught in an unblocked guard rail, the answer of a witness who took plaintiff's shoe out of the guard rail after the accident that "such an accident could not have happened with a blocked guard rail," though in the nature of an opinion, is a statement of fact based on his observation of the place, and experience with the shoe, and hence not error.

Appeal: *Objections—rule made by objector.* Where defendant's objection to certain evidence on the ground of irrelevancy was sustained, it was not entitled to object to the exclusion of evidence on the same subject subsequently offered in its own behalf.

SUPPLEMENTAL OPINION, October 24, 1901.

FILINGS IN SUPREME COURT: *Stipulation and rules.* Where the time of filing abstracts and motions is the subject of stipula-

tion between the parties, neither can complain that such abstracts or motions were not filed within the time required by the rules of the supreme court.

*Appeal from Muscatine District Court.*—HON. W. F. BRANNAN, Judge.

THURSDAY, MAY 16, 1901.

ACTION to recover damages for personal injuries sustained by the plaintiff, while in the employment of the defendant as a switchman in its yards at Muscatine, by reason of certain alleged acts of negligence on the part of the defendant, and without fault or negligence on the part of the plaintiff. The plaintiff charges "that said injury was caused by and through the negligence, carelessness, and default of the defendant and its servants in not properly inspecting said car with which he had to work; in receiving them upon its tracks and in its train in their defective, dilapidated, unsafe, and dangerous condition; in placing them in the train and using them in their condition, when in bad repair and unfit for use; in not furnishing cars and machinery in ordinarily safe condition, and not instructing him, warning, or giving notice of their condition, and using the ordinary reasonable care and caution for his safety in that regard, in their employ. * * * Plaintiff further alleges that his injuries aforesaid were caused by and through the carelessness, negligence, and default of this defendant and its servants in failing to fill the space between the guard rail and main rail, and in suffering it to be used in such unsafe, defective, and dangerous condition in said yard, of which it had notice, and he was thereby thrown down, and his left leg run over by the cars and crushed and mangled, and he was otherwise greatly bruised, hurt, and wounded, as above stated." The defendant answered, admitting that plaintiff was employed as alleged, and that he was injured in attempting to uncouple cars in one of defendant's trains, in consequence of which his left foot was amputated, and

denies every other allegation in the petition.    Further answering, the defendant alleges that plaintiff knew the condition of the coupling of said cars, and of the said track, rails, and guard rail, when he attempted to uncouple said cars, and assumed the risk of injury therefrom, if any there was, as one of the risks incident to his employment.    Defendant further alleges that the plaintiff was guilty of negligence contributing to his injury by going between said cars and attempting to uncouple them while in motion.    Verdict and judgment were rendered in favor of the plaintiff for $20,000.    The defendant appeals.—*Reversed.*

*Carskaddan & Burk, Carroll Wright,* and *Robt. Mather* for appellant.

*M. A. McCoid* and *Horan & Devitt* for appellee.

Given, C. J.—I.    Plaintiff filed a denial of defendant's abstract, an additional abstract, and a motion to dismiss the appeal and affirm upon the ground that a "full, complete, and correct abstract," as required, was not filed, and because the abstract filed was not filed within the time required.    Defendant moves to strike said additional abstract and motion because not filed in time.    We will not extend this opinion by a discussion of these motions, further than to say that the defendant's abstract is so far full and complete as that we should not dismiss or affirm upon the ground that it is not as required.    As to the times of filing, neither party is within the rules; but, as this was the subject of stipulation between them, they have no just cause for complaint on this ground.    Both motions are overruled.

II.    A brief statement of the facts will render clear the questions discussed:    Plaintiff was in the employ of defendant, at the time he was injured, as a switchman or car catcher in its yards at Muscatine.    On the evening of October 16, 1897, he, in the line of his duty, attempted to uncouple two cars of the Burlington,

Cedar Rapids & Northern Railway Company, that had just been received in defendant's yards. Those cars were provided with an appliance by which, by means of a lever, they could, when in order, be uncoupled without going between the cars. Plaintiff tried to uncouple with the lever, but, by reason of the coupling being out of order, he could not thus draw the pin. Plaintiff, seeing this defect, and knowing that because thereof he could not draw the pin by use of the lever, stepped between the moving cars, and attempted to draw the pin with his hand. While walking along between the moving cars in this attempt, his left foot caught between the rail and an unblocked guard rail, and held him so that he was thrown down by the car, between the rails, and seriously injured. Plaintiff had been in the employment of the defendant in its roundhouse at Eldon as a helper from in 1892 to October, 1896, and as a brakeman between Eldon and Rock Island from August 7 to October 14, 1897, at which time he was assigned to duty as a switchman in the yards at Muscatine. He worked as switchman the nights of the 14th and 15th, and up till 6:50 P. M. of the 16th, when he was injured. Amputation of his left leg was rendered necessary by reason of the injuries, and he suffered other injuries, the details of which need not be stated.

III. Defendant's first contention is that there is no evidence warranting a verdict for the plaintiff, for the reason that the evidence shows contributory negligence, and assumption of the risk incident to the unblocked guard rail. The court instructed that the defective condition of the lever was not of itself the immediate cause of the injuries, but that they directly resulted from the condition of the guard rail; and the jury was told as follows: "Was the defendant guilty of negligence in leaving the said space open and unblocked, and of such width that the foot of an employe might be caught and held in it long enough to sustain injury from a train in motion? This is a question which you are to answer from the evidence before you." Plaintiff's counsel insist

that this left the allegation that defendant was negligent in respect to the coupling to be considered.    Surely it did, as an incident in the case, but not as the proximate cause of the injuries.    We cannot say, as a matter of law, that under the evidence plaintiff was guilty of contributory negligence, or that he assumed the risk incident to the condition of the guard rail.    These were questions for the jury, and, under the evidence relating to them, we should not interfere with their verdict on this ground.

IV.    The defendant offered to show that there were a large number of unblocked guard rails in its yards, at other points than Muscatine, along that part of the defendant's road over which the plaintiff had worked.    To this evidence the plaintiff's objection was sustained.    Defendant insists that it was admissible as bearing upon the questions of assumption of risk and contributory negligence, and cites *Keist v. Railway Co.*, 110 Iowa, 32.    In that case the plaintiff's intestate was injured by being brought in contact with a certain cattle chute, and it was held that evidence as to the construction of such chutes on the part of the defendant's road over which the deceased had been employed was competent to be considered, as tending to show knowledge on the part of the deceased as to the proximity of such chutes.    A noticeable distinction between the cases is that cattle chutes were perfectly open and obvious to brakemen in passing on their trains, while it was not so apparent whether or not guard rails were blocked.    Surely brakemen passing at their posts on moving trains would not be likely to observe whether or not guard rails were blocked, and therefore we think there was no error in excluding this evidence as to the condition of guard rails in other yards than that where the plaintiff was injured.    Plaintiff, having testified that he had a consultation with Dr. Huston about having another operation, was asked: "What does he advise with reference to it?"    To this the defendant objected as incompe-

tent and immaterial, and, the objection being overruled, the witnesss answered: "He says he is afraid there will have to be another operation performed, before I will be able to wear the leg." Later the witness stated, over defendant's objection, as the reason why the doctor was not at the trial, that he was sick. Clearly, this was admitting hearsay testimony, and the mere fact that the doctor was sick did not render it the less objectionable. It is said the evidence was not prejudicial; but not so, for, if another operation might be necessary, it would certainly tend to enhance damages because of future pain and suffering. One Hansen, having testified that he took plaintiff's shoe out of the guard rail after the accident, and as to how it was fastened therein, and how guard rails are blocked, was asked, "Could this accident have happened if that had been done?" Defendant objected as incompetent, and, the objection being overruled, the witness answered, "No, sir; it could not have happened." While the answer is somewhat in the nature of an opinion, it is also a statement of a fact based upon his observation of the place, and his experience in withdrawing the shoe. It was not possible for the witness to convey to the jury in words all the conditions as he saw them, and, that being so, it was competent for him to answer as he did.

V. The court instructed as follows: "If you find for the plaintiff, you will consider the age he would probably have reached if he had remained in good health, as ascertained by the tables of the expectancy of human life which have been introduced in evidence. He was, it appears, 23 years old at the time of the accident; and he would, according to the said tables, have lived 40 17-100 years longer, or to the age of about 63 years. You will also consider the extent to which his earning power as a laboring man would be lessened and diminished by the character and nature of his injuries; but, in ascertaining this amount, you will allow him the present worth of such earnings, rather than

the gross amount running through the probable duration of his life." Defendant asked an instruction to the effect that this expectancy of life does not necessarily apply to persons engaged in hazardous employments, but is based upon the observed expectancy among persons in ordinary pursuits, "and you should bear this in mind in any consideration which you may give to said mortality table." This instruction was refused. The instruction given makes the life tables conclusive as to "the age he would probably have reached." This certainly is not the rule. "They are not conclusive upon the question of the duration of life, but are competent to be weighed with other evidence. The physical condition of the injured person at the time next preceding the injury, his general health, his avocation in life with respect to danger, his habits, and probably other facts, enter into the question of the probable duration of life." *Railway Co. v. Chambliss,* 97 Ala. 171 (11 South. Rep. 897); *Railroad Co. v. Putnam,* 118 U. S. 445 (7 Sup. Ct. Rep. 1, 30 L. Ed. 257); *Scheffler v. Railway Co.,* 32 Minn. 518, 21 N. W. Rep. 711).

We think the court also erred in limiting the extent of plaintiff's earning power in the future to that of a laboring man. The instruction, construed according to common acceptation, must be understood to refer to his ability to earn by manual labor. He might be totally disabled from performing manual labor, yet be able to earn in other avocations. See *Laird v. Railway Co.,* 100 Iowa, 336.

VI. Defendant insists that the issues were not clearly stated to the jury, and that the instructions are confused and complicated. This complaint is not without foundation. The petition alleges in detail as facts that from which the ultimate facts constituting the cause of action appear.

The court, instead of stating the ultimate facts alleged, follows the petition in its numerous details, thus rendering the issues somewhat obscure. Notwithstanding the court withdrew the charge of negligence as to the condition of the coupling as a proximate cause of the injuries, yet a large

part of the instructions is devoted to stating that issue and the law pertaining thereto. It was unnecessary to have made any mention of that charge of negligence, or, if mentioned, it was sufficient to say that it was withdrawn from consideration. To include it in the statement of the issues, and to instruct upon it, as was done, surely tended to confuse the jury. The defendant's remaining contention is that the verdict is excessive. As, for the reason already stated, the judgment must be reversed, we forbear from expressing any opinion on this last complaint.—Reversed.

---

### Supplemental Opinion.

### Thursday, October 24, 1901.

Per Curiam.—Appellant asks a rehearing as to the ruling announced in the first part of the fourth paragraph of the opinion to the effect that the court erred in refusing to allow defendant to prove that a large number of its guard rails were unblocked on the line of its road over which defendant worked. A careful review of the record leads us to the conclusion that this question was not raised thereby. The defendant called one Biddings, who, having testified that there were 52 guard rails at Muscatine that had been unblocked for months, some for more than a year, was asked as follows: "Q. Now, were you familiar with the guard rails at the time of the accident in controversy, and prior thereto, as to their condition as to blocking at other points on the line of the Southwestern Division between Eldon and Rock Island?" To which he answered: "Yes." Plaintiff objected to the question as leading, suggestive, irrelevant, and immaterial, whereupon the court inquired: "What is the object of this inquiry?" To which appellant's counsel replied: "The object is to show the large number of unblocked guard rails along the line of the road over which plaintiff worked." Objection sustained. Defendant excepts. "Q. What was

the condition of the guard rails with reference to being blocked or unblocked, for instance, at Washington and West Davenport, at the time of the accident in controversy and during several months prior thereto ?" Plaintiff objected as leading, suggestive, irrelevant, and immaterial, which objection was sustained, and defendant excepts. It was upon these rulings that appellant based its claim of error. It will be observed that the first interrogatory was simply whether the witness knew, and the second as to the condition of the guard rails at Washington and West Davenport, stations between Eldon and Rock Island. Appellant made no further offer of proof as to the condition of the guard rails at other stations than at Muscatine. It appears from appellant's abstract and appellee's amendment thereto that prior to this the plaintiff had been called and examined as a witness in his own behalf; and, having testified in chief: "I had seen guard rails at Eldon. At Eldon is the only place I got round to see them,"—he was asked: "Q. Those you saw at Eldon, state to the jury whether or not they were blocked. (Defendant objects to the question as immaterial. Objection sustained. Plaintiff excepts.)" In *Crawford v. Wolf,* 29 Iowa, 567, it was held that a party cannot complain of the admission of evidence under a rule adopted by the court claimed to be erroneous, when such rule was adopted at the instance or upon the suggestion of the party complaining. The same is true as to rulings rejecting evidence. If it was immaterial, as claimed by defendant in its objection to the question put to the plaintiff on his direct examination, it was surely immaterial as to the question put to the witness Biddings. Defendant, having invited the ruling that the condition of the guard rails at other stations than at Muscatine was immaterial, may not complain of the application of the same rule to its offer of proof.

In view of this state of the record, we think appellant is in no condition to question the ruling complained of. It follows from this conclusion that the petition for rehearing

must be overruled, and that for the reasons pointed out in the former opinion the judgment of the district court will stand REVERSED.