LEWIS ELLINGTON v. GREAT NORTHERN RAILWAY COMPANY.[1]

November 10, 1905.

Nos. 14,567—(81).

**Railway—Negligence.**

To render a railroad company liable for injuries resulting from the operation of its trains or other conduct of its business and affairs, it must appear that the company failed in the performance of some duty it owed to the injured party.

**Injury to Trespasser.**

A railroad company as a general rule owes no duty to a trespasser upon its premises, child or adult, except to refrain from wantonly or wilfully injuring him.

**Rule Applied to Facts of Case.**

On the facts disclosed by the record, which are stated in the opinion, it is held that plaintiff's intestate was, at the time of the injury resulting in his death, to recover for which this action was brought, a trespasser upon defendant's premises, and defendant owed him no duty to discover his presence thereon before moving the cars which ran upon and killed him. The general rule that a railroad company is under no legal obliga-

[1] Reported in 104 N. W. 827.

tion to keep a lookout for trespassers upon its premises, adults or children, except to avoid injury to them after discovering their presence, applies.

**Fence.**

A fence constructed in accordance with the provisions of G. S. 1894, § 2055, is a sufficient compliance with the statutes requiring a railroad company to fence its right of way, even though the road so fenced extends parallel to and within one hundred feet of a public highway.

**Repeal of Section.**

G. S. 1894, § 2698, requiring every railroad company to fence its line of road, when operated along and within one hundred feet of a public highway, with a suitable and substantial post and board or stone fence, was repealed by implication by the statutory enactments referred to in the opinion.

**Evidence.**

The failure of a railroad company to fence its road as required by statute is prima facie, but not conclusive, evidence of negligence. When not fenced, the question whether a properly constructed fence would have prevented a child of tender years from going upon the right of way is a question of fact.

Action in the district court for Polk county by Lewis Ellington as administrator of the estate of Hans H. Arneson, deceased, to recover $5,045 for the death of intestate. The case was tried before Watts, J., and a jury, which rendered a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Ole J. Vaule* and *Wm. P. Murphy,* for appellant.

*M. L. Countryman* and *A. C. Wilkinson,* for respondent.

BROWN, J.

The facts in this case are as follows: The line of defendant's railroad extends through the village of Carman, a suburb and within the limits of the city of Crookston. In the vicinity of the place where the accident complained of occurred its yards are located, within which are a coal shed, icehouse, and several side tracks, all upon the right of way. The land on each side of the track is platted into lots and blocks, with a street extending along the line of and between the right of way and the platted lots; but no streets extend across the right of way. Deceased, a boy four years of age, lived with his parents on one of the platted lots, a short distance away, where they had resided for some

time prior to the accident. On August 9, 1904, at about 7.30 o'clock in the evening, the servants of defendant backed one of its engines down the side track leading to the coal shed for the purpose of taking on coal. Two freight cars stood in the way on the same track, and the engineer pushed or "shunted" them forward a distance of two hundred feet or more, where they collided with and were stopped by a loaded car standing further down this track. The impact sent the loaded car forward thirty or forty feet. Soon after plaintiff's intestate was found dead underneath the forward end of the two cars so shunted down the track. How the child came to be at the point of collision between the cars, or just how the accident happened, was not made clear by the evidence. There was evidence showing that his parents had, just prior to the accident, sent him on an errand to a neighbor living on the opposite side of the track.

This action was brought to recover for the boy's death upon two grounds of alleged negligence: First, that defendant had failed and neglected to fence its right of way at the place of the accident; and, second, that the servants and agents of defendant were negligent and careless in the manner of moving the cars which stood in the way of the approach of the engine to the coal shed, and that no precautions were taken before doing so to ascertain whether any children or others were in or about the yards at a place of danger. The defense was, in addition to the contention that the absence of the fence was not the proximate cause of the accident, that the parents of deceased were guilty of contributory negligence in sending him on an errand to the neighbor residing at the opposite side of the yards; there being no crossing over the right of way at this place. The jury returned a verdict for defendant, and plaintiff appealed from an order denying his motion for a new trial. Several errors are assigned, which will be disposed of in the order stated in the brief.

1. It was conceded on the trial that the right of way was not fenced as required by statute, and the trial court instructed the jury that such failure on the part of defendant constituted evidence of negligence on its part, but submitted to them the question whether the absence of the fence was the proximate cause of the accident; and, further, that a fence constructed in accordance with the provisions of section 2055, G. S. 1894, would be a compliance with the law requiring defendant to

fence its right of way, and left it to the jury to say whether such a fence, had it been constructed, would have prevented the deceased from going upon the track at the time in question.

It is contended on the part of plaintiff that the court erred in these instructions. We are unable to concur in this contention. Section 2692, G. S. 1894, requires all railroad companies owning or operating a railroad in this state to build and maintain a good and sufficient fence on each side of such road, and section 2693 provides that a failure of the company to comply with this requirement shall be deemed evidence of negligence on its part. In construing this statute, we have never held that a failure of compliance therewith was conclusive evidence of negligence. The most the court has said in any case has been declaratory of the statute, which makes such failure evidence of negligence against the company. G. S. 1894, § 2693; Rosse v. St. Paul & D. Ry. Co., 68 Minn. 216, 71 N. W. 20. It was in this view of the law that the trial court submitted to the jury the question whether, if a proper fence at the place of this accident had been erected, it would have prevented the deceased from going upon the right of way.

It was held in the case of Halverson v. Minneapolis & St. L. Ry. Co., 32 Minn. 88, 19 N. W. 392, that as to certain animals, such as horses, it would be clear, as a matter of law, that a fence would "turn" them, and as to other animals, such as sheep or swine, it would be a question of fact depending upon the size of the animal; and in a case like that at bar, whether a fence constructed as required by law would prevent children from passing it and going upon the right of way is a question of fact, to be determined according to the facts and circumstances presented by the evidence. In Fezler v. Willmar & Sioux Falls Ry. Co., 85 Minn. 252, 88 N. W. 746, it was held as a matter of law that the absence of the fence was not the proximate cause of the injury there complained of. So on this feature of the case the trial court correctly instructed the jury.

It is also urged that the court erred in stating to the jury that a fence constructed in accordance with the provisions of section 2055, G. S. 1894, would be a compliance with the railroad fence law; it being insisted, in this connection, that as the right of way in question extended along and adjacent to a public street, the company was required to fence the same in accordance with the provisions of section 2698. That

statute was passed in 1870, and is the first railroad fence law enacted by our legislature. It provides that it shall be the duty of every railroad corporation within this state to cause its line of road, when operated along or upon the line of any public road or highway, or parallel thereto and within one hundred feet distant therefrom, to erect and maintain a suitable and substantial post and board or stone fence, at least five feet in height, along or near the line of its road, so as to separate the same from the highway and prevent the passage of teams or animals over the track at places other than regular and properly constructed crossings. It is insisted that this statute is still in force, and that, as the evidence is conclusive of defendant's failure to comply with it, the court erred in instructing the jury that the fence provided for by section 2055 was sufficient.

An examination of the various statutes on this subject leads to the conclusion that this statute has been repealed. Subsequent to its enactment the legislature passed section 2692 (Laws 1876, p. 40, c. 24), by which all railroad companies were required to fence their tracks by good and substantial fences, and for a failure to do so imposed a liability for all damages suffered by any person in consequence of such neglect. Section 2055 was passed long subsequent to the passage of section 2698, and was held in Halverson v. Minneapolis & St. L. Ry. Co., supra, to apply to railroad companies. That section provides that, in all cases where any law of this state requires to be erected or maintained any fence or fences for any purpose whatever, it shall be a sufficient compliance with such law if there shall be erected and maintained a barbed wire fence, consisting of two barbed wires and one smooth wire, with at least forty barbs to the rod; the wire to be firmly fastened to posts not more than two rods apart. The language of that statute is broad and comprehensive, and must be taken to have been intended by the legislature to cover the entire subject of fences; and, though repeals by implication are not favored, the conclusion is unavoidable that section 2698 was thereby repealed. We have examined the decisions of the court where the duty of a railroad company to fence its right of way has been involved, and in no case is section 2698 relied upon or referred to. From this, in view of the fact that many miles of railroad in this state extend along public highways, and this particular statute has never been invoked, the inference arises that it has been considered as repealed.

2. It is further insisted that the court erred in taking from the jury the question whether defendant was guilty of negligence in not taking precautions, before moving the cars which ran upon and killed the child, to ascertain if any children or other persons were in or about the yards. It is claimed that young children were in the habit of frequenting the right of way in this immediate vicinity, and that such practice was known to the agents of defendant, in view of which counsel contends that it was the duty of the company, before moving the cars about the yard, to take some steps to ascertain whether children were there, and, if so, to guard against injuring them.

There was no error in the action of the court in withdrawing this question from the jury. The doctrine laid down by some of the courts, to the effect that a railroad company is under legal obligation to keep a constant lookout for trespassers particularly children and is liable for injuries resulting from a failure to do so, has never been followed or applied in this state. This court has steadily adhered to what seems to us the more just and equitable doctrine prevailing in most of the courts (23 Am. & Eng. Enc. [2d Ed.] 753), that to render a railroad company liable for injuries resulting from the operation of trains or other conduct of its business, it must appear that the company failed in the performance of some duty it owed the injured party; such failure being the proximate cause of the injury. Akers v. Chicago, St. P., M. & O. Ry. Co., 58 Minn. 540, 60 N. W. 669; Wickenburg v. Minneapolis, St. P. & S. S. M. Ry. Co., 94 Minn. 276, 102 N. W. 713. We have always held that a railroad company owes no duty to a trespasser, except to refrain from wantonly or wilfully injuring him.

This rule has been applied both as to adults and children for many years.

In Scheffler v. Minneapolis & St. L. Ry. Co., 32 Minn. 518, 21 N. W. 711, it appeared that a child eighteen months of age strayed from his home, a short distance from the railroad track, on the right of way at a point not a public crossing, and was killed by a passing train. The trial court charged the jury in that case that, if the engineer in charge of the train could by the exercise of reasonable care have seen the child upon the track in time to have averted the accident, the company was liable. On review in this court the instruction was held erroneous. In disposing of the question the court said that defendant

did not owe the child, a trespasser, the duty of having its engineer look to see if he was upon the track, and therefore the fact that the engineer could have seen him if he had looked did not make the company liable.

In Hepfel v. St. Paul, M. & M. Ry. Co., 49 Minn. 263, 51 N. W. 1049, the court said: "A railway company is not ordinarily obliged to keep a lookout for trespassers, whether adults or children, on its cars or track, nor to presume that they will expose themselves to danger thereon; but, having notice of their presence and that they are in danger, its servants controlling the movements of its cars or machinery are bound to use reasonable care to avert it." See also Studley v. St. Paul & D. R. Co., 48 Minn. 249, 51 N. W. 115.

The precise question here before us was presented and argued in the case of Mattes v. Great Northern Ry. Co., 95 Minn. 386, 104 N. W. 234, and, though not covered by the opinion, it was not regarded as consistent with the rules on the subject theretofore applied in similar cases. Of course, in all cases where the presence of trespassers is known, proper care must be exercised to avoid injuring them. Sloniker v. Great Northern Ry. Co., 76 Minn. 306, 79 N. W. 168. And where the company expressly or by silent acquiescence permits its yards and premises to be frequented or used by the public generally, or permits such conditions respecting the use thereof to exist as to make it reasonable to anticipate the presence of trespassers, proper precautions must be taken to ascertain whether any are present, that injury to them may be avoided.

But such is not this case. The evidence fails to show that the company, expressly or impliedly, permitted children to frequent its yards for the purpose of play or otherwise, and therefore no duty to anticipate their probable presence existed. No highway extended over the railroad yards, and we find no evidence in the record tending to show that people living in the vicinity were in the habit of crossing the track at this point or making use of the same as a highway. While the evidence shows that children were to some extent in the habit of going upon the yards—smaller ones at the icehouse, picking up particles of ice, and larger ones at the coal shed, shooting pigeons—it is clear that the agents of the company, whenever they were found there, drove them away, and the evidence does not show that they ever knowingly permitted them to remain. Deceased was not upon the premises as a

licensee, by the express or implied invitation of defendant, but, on the contrary, was a trespasser, and the rule that a railroad company owes no duty to a trespasser, whether child or adult, except to refrain from knowingly or wilfully injuring him after discovering his presence, applies.

The only exception to this rule, so far as our decisions are concerned, is found in the so-called "turntable" and similar cases; but it can have no application to a case like that at bar. The doctrine of those cases is founded on the conduct of the owner of premises in keeping thereon unconcealed and unprotected dangerous instrumentalities, which are in their nature alluring and attractive to children of tender years. From such conduct on the part of the owner of the premises, the law implies an invitation to infants to enter thereon for the purpose of amusing themselves. But this court has declined to extend that doctrine to other cases, and it has been strictly limited to dangerous machinery and instrumentalities. Keffe v. Milwaukee & St. P. Ry. Co., 21 Minn. 207; Mattson v. Minnesota & N. W. R. Co., 95 Minn. 477, 104 N. W. 443; Erickson v. Great Northern Ry. Co., 82 Minn. 60, 84 N. W. 462; Stendal v. Boyd, 73 Minn. 53, 75 N. W. 735; Haesley v. Winona & St. P. R. Co., 46 Minn. 233, 48 N. W. 1023. Deceased was not lured or attracted to the railroad yards by unprotected machinery or other dangerous instrumentalities kept thereon by defendant, and the case does not come within the doctrine of the "Turntable Cases."

3. There was no error in the charge of the court on the subject of contributory negligence. From what has been said on the other branch of the case, it follows that defendant was not required to keep a lookout for trespassers, nor to exercise care to discover their presence upon its premises. The trial court correctly said to the jury that, if the parents of deceased sent him on an errand on the opposite side of the railroad yards, they were guilty of contributory negligence. There was no evidence that defendant's employees knew of the presence of deceased on the track, and the rule of wilful and wanton negligence does not apply.

This disposes of all the assignments of error requiring especial attention and results in an affirmance of the order appealed from.

Order affirmed.