NICHOLAS FABER *vs*. ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

October 26, 1882.

**Evidence—City Ordinance, as to Rate of Speed of Trains, admitted, though not Pleaded.**—Upon the trial of an issue of negligence of a railroad company in the running of its train within the limits of an incorporated city, the fact that the rate of speed at which the train was run was prohibited by an ordinance of the city is competent evidence of negligence, and may be proved, although the existence of the ordinance has not been alleged in the pleadings.

**Negligence—Crossing Railway Track.**—Evidence in this case considered as tending to show that plaintiff, before coming to the railroad crossing, where he was injured by a passing train, seasonably exercised his duty of looking along the line of the railroad track, and as having been properly submitted to the jury.

**Instructions to Jury—Erroneous Requests.**—The refusal to instruct the jury as requested is not error where the instruction submitted to the court assumes a fact which is in issue, and upon which the evidence is conflicting.   A request for an instruction to the jury to the effect that it was the duty of plaintiff (in the exercise of carefulness) to do that which the evidence tends to show he was unable to do, was rightly refused.

Appeal by defendant from an order of the district court for Hennepin county, *Lochren*, J., presiding, refusing a new trial.   The case is stated in the opinion.

v.29—30

Defendant's fifth request, which was refused, was as follows: "In this case the undisputed facts are that until plaintiff got within sixty or seventy feet of the track, he could not see the approaching train, by reason of intervening buildings, and the conformation of the ground; that after he got within sixty or seventy feet of the crossing, his view of the train was unobstructed; that at that time the coming train was in full sight, so that, if plaintiff had looked, he might have seen it, and, if he had stopped to listen, he might have heard it approach, even though the bell was not ringing; that the plaintiff knew of the existence of the railway track, and was familiar with the location and surroundings of the crossing, and that the railway was in frequent use. It was therefore his duty, before attempting to cross the track, and as soon as he got past the building, to both look and listen for the approaching train, and, if need be, to stop for that purpose; and also, in approaching the point where he could see the track, to keep his team at such rate of speed and in such control that he could stop it within the distance between where he could see the track and the crossing itself; and if he failed in either of these particulars, he cannot recover."

*R. B. Galusha* and *Benton & Roberts,* for appellant.

The city ordinance regulating the the speed of railway trains not having been pleaded, it should not have been admitted in evidence. *City of Winona* v. *Burke,* 23 Minn. 254; *Garvin* v. *Wells,* 8 Iowa, 286; *Goodrich* v. *Brown,* 30 Iowa, 291; *Mooney* v. *Kenneth,* 19 Mo.. 551; Dillon on Mun. Corp. § 50; 1 Chitty on Pleading, 246; Gen. St. 1878, c. 66, § 110.

Plaintiff was guilty of contributory negligence. *Wilds* v. *Hudson River R. Co.,* 29 N. Y. 315; *Donaldson* v. *Mil. & St. P. Ry. Co.,* 21 Minn. 293; *Brown* v. *Mil. & St. P. Ry. Co.,* 22 Minn. 165; *Smith* v. *Minn. & St. L. Ry. Co.,* 26 Minn. 419; *Salter* v. *Utica & B. R. R. Co.,* 75 N. Y. 273.

It was error to refuse defendant's fifth request. Plaintiff was bound to both look and listen, and to stop for that purpose, if necessary. Pierce on Railroads, 343; 1 Thompson on Negligence, 426; *Tucker* v. *Duncan,* 9 Fed. Rep. 872; *Pa. R. Co.* v. *Beale,* 73 Pa. St. 504; *Allyn* v. *B & A. R. Co.,* 105 Mass. 77.

*Baxter, Grethen & Penney* and *E. M. Wilson*, for respondent, that the city ordinance was properly received in evidence, cited *Massoth* v. *Delaware & H. Canal Co.*, 64 N. Y. 524; *Beiseigel* v. *N. Y. Central R. Co.*, 14 Abb. Pr. (N. S.) 29; *City of Rochester* v. *Montgomery*, 72 N. Y. 65; *City of Boston* v. *Worthington*, 10 Gray, 497; *Lane* v. *Atlantic Works*, 111 Mass. 136; *Hall* v. *Ripley*, 119 Mass. 135.

DICKINSON, J.* A recovery was sought in this action for injuries suffered by plaintiff from collision with a train of cars of the defendant, at its crossing of a street in the city of Minneapolis. The right to recover is based upon alleged negligence in the running of the train. The answer puts this in issue, and charges contributory negligence on the part of the plaintiff.

1. The evidence upon the trial tended to show that the train was running at the rate of from 12 to 15 miles an hour. The court received in evidence, against defendant's objection, an ordinance of the city which forbade the running of railroad locomotives or cars within the city at a rate of speed greater than six miles an hour. This is claimed to have been error, for the reason that the enactment or existence of the ordinance had not been pleaded. The objection cannot be sustained. The fact that the rate of speed at which the train was run was prohibited by the municipal law was competent evidence going to prove negligence, (*Kelly* v. *St. Paul, M. & M. Ry. Co., ante*, p. 1; *Massoth* v. *Delaware & H. Canal Co.*, 64 N. Y. 524;) and, being evidence of the fact pleaded, it might be proved, although the existence of the ordinance had not been alleged in the complaint.

2. It is urged that the undisputed evidence shows that the plaintiff contributed to the occurrence of the accident by his own negligence in not looking seasonably for approaching trains. The issue as to plaintiff's negligence was submitted to the jury. The question now presented is, does it conclusively appear that the plaintiff did not look up the line of the track as soon as he could do so, or as soon as common prudence demanded? Two streets intersect nearly at right angles. Along over these the railroad is laid. The plaintiff, travelling upon the other street, was approaching the railroad crossing,

---

*Mitchel, J., being absent from the argument, took no part in this case.

and his view in the direction whence the train came was obstructed by buildings, so that he could not have seen the cars until he approached the point of intersection of the streets, so that he could see along the track past a building standing at the corner or junction of the two streets. This building stood fifty-three feet from the centre of the railroad track. Plaintiff was driving his span of horses with a sleigh at a slow trot. The horses were ordinarily easily managed, and had never been afraid of railroad cars. The plaintiff did see the train, as the evidence shows, after he passed the obstruction at the street corner, and before his horses came to the railroad track, and tried to stop them, but they became frightened so that he could not control them, and ran across the track ahead of the locomotive, which struck the sleigh as it passed over the rails.

The evidence of the plaintiff as to whether he did look along the track as soon as he came where he could do so is confused, and not in all respects consistent, so that it is not clear what he intended to state the fact to be. The following is a part of his testimony: "I saw the cars coming there on the corner, and that is all I saw, and then the horses jumped.  *  *  *  The cars came right on the corner there when I came there, and I saw them, and that made me afraid and the horses afraid.  * · *  *  When I saw the cars I was not a good ways past the corner of that house; I was right close by it.  *  *  *  When I first saw the cars the engine was on Main street," (on which plaintiff was travelling.) There is other evidence indicating that the plaintiff did not look in the direction of the train until he had passed over a considerable part of the distance between the point where he might have seen the train and the place of collision, but we think the inference may fairly be drawn from the testimony above recited that he did look at the corner mentioned, and that the train was then very near to the crossing. It was the province of the jury to interpret the confused and seemingly-contradictory testimony of the plaintiff, and since it may fairly be interpreted as showing that he did do all that is claimed he ought to have done in this respect, we may not reverse the conclusions of the jury and of the trial court. This issue was properly left to the jury.

3. The refusal of the court to charge the jury as requested in the fifth proposition submitted by defendant was not error. It requested the instruction that if the plaintiff had stopped to listen, he might have heard the train approach, even though the bell was not ringing. The court was asked to assume too much. The evidence of plaintiff and of another man who was in the sleigh with him went to show that they did listen, and could not hear the cars, and that no bell was rung until the train was very near the street crossing. Still another witness testified to the fact that the sound of the train was not very perceptible, suggesting that the wind, perhaps, made it less distinct than usual. It does not appear whether any other cause prevented the plaintiff from hearing the train. This request is erroneous, too, in that the court were asked to say that it was the plaintiff's duty, on approaching the point where he could see the track, to keep his team in such control that he could stop it within the distance between where he could see the track and the crossing itself, and, if he failed, he cannot recover. It is enough to say of this that the law does not conclusively presume negligence from his inability to control his horses, or to prevent their running away when they became frightened by the train.

4. Another instruction, requested by defendant and refused, was as follows: "In view of the fact that plaintiff could not see whether any train was coming until within 60 or 70 feet of the crossing, and in consideration of all the other undisputed facts in this case, it was plaintiff's duty, as soon as he got where he could see the track, to come to a full stop, and both look and listen for the coming train, unless he could by other means discover the approaching danger in time to avoid it." This involves a similar error to that embodied in the previous request. The court was asked to say in effect that plaintiff's failure to stop his team, with the conditions named, was negligence. The evidence tends to show that he was unable to stop his horses by reason of their becoming suddenly frightened. The non-performance of impossible things does not constitute negligence.

Order affirmed.