(*Criminal Court of Cook County.*)

## The People of the State of Illinois

### vs.

### William J. Davis, Thomas J. Noonan and James E. Cummings.[1]

(February 9, 1905.)

1. MOTION TO QUASH AT COMMON LAW. At common law a motion to quash an indictment was addressed to the sound discretion of the court. (KERSTEN, J.)

2. RULE IN ILLINOIS. But in Illinois error may be assigned upon the overruling of a motion to quash, and it is the duty of the court to quash if the indictment is insufficient to sustain a conviction. (KERSTEN, J.)

3. STATUTES—RULE OF CONSTRUCTION. As a general rule the courts will construe statutes as declaratory of the common law and not in derogation of it. And when words are used in a statute which have a well known meaning at common law, the courts will give such words their common law meaning. (KERSTEN, J.)

---

[1] See also *People v. Davis*, 1 Ill. C. C. 245, for a contrary decision on a second indictment for the same offense.—Ed.

4. "UNLAWFUL ACT"—DEFINED. The words "unlawful act," as used in the statute defining manslaughter, mean unlawful as defined by the common law, and include not only criminal acts, but trespasses and civil wrongs which are not prohibited by statute. (KERSTEN, J.)

5. NEGLIGENCE—MANSLAUGHTER. If a death occurs through the negligent use of dangerous agencies it is manslaughter. But the negligence to be "unlawful" must amount to an omission of a legal duty and not a mere neglect of a social or moral duty. (KERSTEN, J.)

6. MANSLAUGHTER—PROXIMATE CAUSE. The unlawful act or omission must have been the proximate cause of the death. (KERSTEN, J.)

7. STATUTES—REVISION OF ENTIRE SUBJECT—REPEAL. A statute which is an entire revision of a particular subject-matter repeals the common law upon that particular subject. (KERSTEN, J.)

8. CRIMINAL CODE DOES NOT REPEAL COMMON LAW. The criminal code was not intended as a complete codification of the criminal laws; the common law remains in force except in so far as it is expressly repealed. (KERSTEN, J.)

9. FIRE ORDINANCES—UPON WHOM DUTY FALLS. Where city ordinances prescribe that buildings of a certain class shall be equipped with fire apparatus, equipment, etc., but fail to designate the person upon whom the duty rests, it will be presumed that it was the intention of the city council to impose such duties upon the owner or lessee of the building. (KERSTEN, J.)

10. ORDINANCES—JUDICIAL NOTICE—PLEADING. The rule is well settled in Illinois that courts will not take judicial notice of city ordinances, nor are such ordinances admissible in evidence unless properly pleaded. (KERSTEN, J.)

11. INDICTMENT—CONCLUSIONS IN. In an indictment the *facts* constituting the offense must be set out. The indictment cannot be aided by the averment of conclusions of law or fact. (KERSTEN, J.)

12. CRIMINAL NEGLIGENCE—LEGAL DUTY. A defendant cannot be found guilty of manslaughter on account of alleged negligence in omitting to perform an act unless the law imposed a legal duty upon him to perform such act, or unless such duty had been directly assumed by contract or otherwise. (KERSTEN, J.)

13. ALLEGATIONS OF INDICTMENT. An argumentative averment of fact is not sufficient in an indictment. (KERSTEN, J.)

14. COMMON-LAW DUTY. In the absence of statute there is no duty on the part of the owner of a building to furnish fire apparatus,

and where it is not alleged that it was reasonably necessary or usual and customary to furnish such apparatus, the offense of manslaughter cannot be predicated upon a failure to so equip whereby death was caused. (KERSTEN, J.)

15. ASSUMED DUTY. An allegation that the defendants had undertaken the care, charge, management and control of a theater building and stage and that it became the duty of the defendants to see that the ordinances and laws in relation to the installation of fire apparatus and equipment were complied with, is not a sufficient allegation that the defendants had assumed or taken upon themselves the duty imposed upon the owner or lessee of the building to furnish such fire apparatus and equipment. (KERSTEN, J.)

16. ALLEGATION AS TO DUTY. An allegation that it was the duty of a defendant to perform certain acts is a mere conclusion of the pleader. (KERSTEN, J.)

17. INVOLUNTARY MANSLAUGHTER—WILFUL ACT. It is a serious question whether the offense of voluntary manslaughter can be "wilfully" committed. (KERSTEN, J.)

18. MISJOINDER. Whether several defendants who are charged with failure to perform several duties can be joined in the one indictment, doubted. (KERSTEN, J.)

19. INDICTMENT—CONCLUSIONS. An allegation that if certain fire equipment had been provided as required by an ordinance, a fire could have been extinguished, is a mere conclusion of the pleader. (KERSTEN, J.)

20. ORDINANCES—DUTY UNDER. An ordinance which provides that every building of a certain class shall be equipped with certain fire apparatus and equipment, but which does not specifically designate the person by whom the duty shall be performed, cannot be made the basis of an indictment for manslaughter against the manager, business manager or stage carpenter of a theater for criminal negligence in failing to comply with such ordinances, whereby death was caused. (GREEN, J.)

21. PROXIMATE CAUSE—FAILURE TO SUPPLY FIRE APPARATUS. Where a fire was caused in a theater building by a spark emitted from an electric light placed in close proximity to certain draperies upon the stage, and a large number of persons are burned to death, an indictment for manslaughter cannot be sustained for negligence in failing to equip the building with fire apparatus and equipment. The fire will be considered the proximate cause of the death, and not the failure to supply the fire apparatus and equipment, even though it is alleged that if such apparatus and equipment were installed, the fire would have been extinguished. (GREEN, J.)

22. MISJOINDER. The manager of a theater and building, the busi-
ness manager of such theater and the stage carpenter thereof,
cannot be joined in an indictment for manslaughter for an al-
leged failure to equip such theater and building and the stage
thereof with certain fire apparatus and equipment. (GREEN, J.)

Indictment for manslaughter. Motion to quash. P. G. D.
76,382. Heard before Judges T. N. Green of Peoria county
and George Kersten of Cook county.

Statement of facts.

The defendants were jointly indicted for the crime of man-
slaughter for negligently causing the death of one Viva R.
Jackson. The defendant Davis was the manager of the Iro-
quois Theatre at Chicago, the defendant Noonan was the
business manager thereof and the defendant Cummings was
the stage carpenter in said theatre. On December 30, 1903,
a fire broke out in said theatre and over 600 persons lost their
lives. The defendants Noonan and Cummings moved for a
change of venue on account of the prejudice of the inhabit-
ants of Cook county and the case was removed to Peoria
county. The defendant Davis then moved to quash the in-
dictment. As a matter of convenience Judge T. N. Green of
Peoria county, to which county the case of Noonan and Cum-
mings had been transferred, sat with Judge Kersten on the
argument of the motion to quash. That motion was granted
and the same order was thereafter entered by Judge Green
in Peoria county.

The indictment charged that on December 30, 1903, a cer-
tain building called the Iroquois Theatre was open and used
for the purpose of producing and giving a performance of a
spectacular play called "Mr. Bluebeard, Jr.;" that said build-
ing was before then planned, constructed and erected for the
purpose of producing and giving therein plays; that there
was then and there in the said theatre in said building a cer-
tain stage which had before then been erected; that said de-
fendant Davis was before then, and then and there engaged
"in a certain lawful business and act, to-wit, the business
and act of managing generally said building and said Iroquois
Theatre therein;" that the defendant Noonan was before

then, and was then and there engaged in a certain lawful business and act, to-wit, "the business and act of managing as business manager said building and said Iroquois Theatre therein," and that said Noonan was before then, and was then and there the business manager of said building and said Iroquois Theatre therein as aforesaid.

That said defendant Cummings was before then and was then and there engaged in a certain lawful business and act, to-wit, "the business and act of stage carpentering on said stage in said building and in said Iroquois Theatre," and that said Cummings was before then and was then and there the stage carpenter of said stage in said building and in said Iroquois Theatre.

That a certain law and ordinance of the city of Chicago, which was then and there in force and operation, did then and there require said building to have over the stage thereof a flue pipe (of certain dimensions) to be made of metal and be opened by a close circuit battery, and that a switch be then and there placed near the electrician's station on said stage, and have a sign thereon, said ordinance being as follows:

"Section 184. There shall be over the stage of every building of class V a flue pipe of sheet metal construction, extending not less than fifteen (15) feet above the highest part of the roof over the stage of said building—flue shall have an area of at least one-thirtieth of the total area of the stage. The dampers for flue shall be made of metal and opened by a close circuit battery; a switch to be placed in the ticket office and one placed near the electrician's station on the stage, each to have a sign and these words printed on it: 'Move switch to left in case of fire to get smoke out of building.'"

That said Iroquois Theatre was then and there a building of said class; that there was before then, and then and there in force a certain ordinance which required a system of automatic sprinklers (describing the kinds and manner of construction thereof), said ordinance being as follows, to-wit:

"Section 185. In every building of class V there shall be a system of automatic sprinklers to be supplied with water from a tank located not less than 20 feet above the highest part of

roof of building. Sprinklers shall be placed above and below the stage; also in paint room, store room, property room and dressing rooms, if they are in or connected with class V building and not separated by approved double iron doors. Tank not to be connected to stand pipe and ladder system, but to have separate pipe for filling from fire pump, and a 3-inch iron pipe extending from tank to outside of building, with siamese connections for fire department use. The entire sprinkler equipment to be approved by the commissioner of buildings, fire marshal and the board of underwriters of Chicago.''

That stationary scenery was then and there used on said stage in said building as said defendants then well knew; that a certain ordinance was then and there in force, which did then and there require that there be then and there kept in said building for use portable fire extinguishers or hand fire pumps on and under said stage and in the fly gallery and rigging loft thereof, and which said ordinance is in the words and figures as follows:

''Section 188. In buildings of class V, and also class IV, where stationary scenery is used, there shall always be kept for use portable fire extinguishers or hand fire pumps, on and under the stage; in fly gallery and in rigging loft; also at least four (4) fire department axes, two twenty-five (25) feet hooks, two fifteen (15) feet hooks, two ten (10) feet hooks, on each tier or floor of the stage, all subject to the approval of the fire marshal.''

That it was then and there the duty of said defendants and each of them, to then and there see that the said ordinances and laws of said city of Chicago were then and there complied with in respect to said building and said Iroquois Theatre, and to then and there have the things required by said laws and ordinances in and about said building, said Iroquois Theatre and said stage, as required by the said laws and ordinances; that each of said defendants were then and there empowered and vested with authority to purchase, procure and furnish each and all of said apparatus, appliances and things required by said laws and ordinances to be placed in and about said building  *  *  *  .

That there was not over said stage a flue pipe of, etc., as said defendants then and there well knew (and all of the other things described) then required by said ordinances, as said defendants well knew; that said defendants "then and there negligently failed and omitted to have in and about said building, said Iroquois Theatre and said stage, the matters and things aforesaid, so required by said laws and ordinances of said city of Chicago, as aforesaid;" that said theatre was then and there opened to the public to witness the production of said certain theatrical performance, as said defendants well knew; that said Davis "then and there had and took upon himself the care, charge, management and control of said building and of said Iroquois Theatre," and that said Noonan "then and there had and took upon himself the care, charge, management and control of the business of said building and said Iroquois Theatre," and that said Cummings "then and there had and took upon himself the care, charge, management and control of the said stage, as stage carpenter thereof, as aforesaid;" that it was then and there the duty of said defendants to use due caution and circumspection for the safety of the persons then and there assembled as aforesaid, and to then and there have in and about said stage the fire appliances, apparatus and things aforesaid "mentioned and by said laws and ordinances of said city of Chicago provided and required as aforesaid, for the safety of the said persons so then and there assembled, as aforesaid, to witness said theatrical performance, spectacle and play as aforesaid."

That one Viva R. Jackson was then and there among and was then and there one of the said large number of persons so then and there assembled to witness the production of said certain theatrical performance; that said defendants, on said December 30, 1903, while so then and there having the care, charge, management and control of said building, * * * and while the said Jackson was then and there in said theatre witnessing the said theatrical performance, and during the progress of the same in and upon the body of said Jackson "did unlawfully, negligently, feloniously and wilfully, and without due caution and circumspection, make an assault;" that a certain lighted arc lamp was then and there, during

the progress of said performance, "negligently and carelessly and without due caution and circumspection put, placed and kept near a certain drapery, which was then and there situated on, in and about said stage," by reason of which said putting "said drapery was then and there ignited and set on fire by said arc lamp;" that "said fire could then and there have been easily extinguished had there then and there been in said building and on said stage the required proper fire apparatus, appliances and things required by said laws and ordinance of said city of Chicago;" that by reason of the lack of said fire apparatus, appliance and things "as aforesaid, required by said ordinances and laws," said fire was not extinguished, the said defendants knowing that there was a large amount of combustible and inflammable material on said stage, near said drapery, which was then and there ignited and set on fire, then and there causing a large amount and quantity of smoke to then and there be upon and over said stage, and that by reason of the lack of an open flue in the roof over said stage, as required by said ordinances, said smoke did not go through said roof of said stage and was not confined to said stage, and that by reason of the lack of said automatic sprinklers, as required by said ordinances, said fire could not be extinguished and put out; that if there had been the proper flue, dampers and switches, as required by said laws and ordinances, a large amount of fire, smoke, gas and flame could have gone through said roof, and would then and there have gone through said roof, and if there had been sprinklers, as aforesaid, said fire could have been extinguished and put out by the same; that by reason of the lack of said apparatus, appliances and things, so required by said laws and ordinances, said large amount of fire, heat and flame was not then and there thrown off, and was not then and there extinguished and put out, and was not then and there confined to said stage; that said defendants did, then and there, by their said negligence in not providing said appliances aforesaid required by said laws and ordinances for the safety of said persons, and in not seeing that said apparatus and things were then and there in and about said building, as re-

quired as aforesaid, ''and by their then and there being engaged in their said lawful business and act without the due caution and circumspection, which was their duty so then and there to use, unlawfully, negligently, feloniously and wilfully caused a large amount of said fire, smoke, heat, gas and flame'' to pour and go from said stage towards, against and upon a large number of persons then and there assembled in said theater, and to, against and upon said Jackson, then and there being in said building, and in said Iroquois Theatre as aforesaid, whereby and by reason of said large amount of fire, gas and flame against said Jackson, the body of said Jackson was then and there mortally burned, and said Jackson was then and there asphyxiated, strangled and choked, and said Jackson did languish and thereafter died on said December 30, 1903.

That the death of said Jackson was then and there caused by said negligence of said defendants ''by their not then and there providing for, and by their not then and there seeing that the same were then and there provided, the apparatus, appliances and things aforesaid required as aforesaid, to be in and about said building and said stage, for the protection of the life of said Jackson,'' and by their then and there not using due caution ''while so being engaged in their said lawful business and act, as aforesaid, as well as by their said carelessness and negligence in then and there putting, placing and keeping said arc lamp, as aforesaid;'' that said defendants the said Jackson ''in manner and form aforesaid, did then and there negligently, feloniously, unlawfully and wilfully kill and slay, contrary to the statutes, and against the peace and dignity of the people of the state of Illinois.''

*John J. Healy*, state's attorney, *A. C. Barnes* and *Harry Olsen*, assistant state's attorneys for the people.

*Levy Mayer, Alfred S. Austrian, Moritz Rosenthal, W. J. Hynes, E. C. Higgins* and *Howard O. Sprogle*, for defendants.

KERSTEN, J.:—

At the last February term, the defendants were indicted on the charge of manslaughter. A motion to quash the in-

dictment having been made and fully argued, it is now the duty of the court to pass upon the sufficiency of the indictment.

It seems that at common law, the motion to quash was considered addressed to the sound discretion of the court. 1 Bish. Crim. Proc. (3rd. ed.), § 763; 1 Chitty, Crim. Law. 299; Archbold, Crim. Pleadings & Practice, p. 35; 2 Hawk. P. C., chap. 25, sec. 146; *State v. Wilson*, 43 N. H. 415, 82 Am. Dec. 163; 10 Ency. of Pleading & Practice, 567; *Ex parte Bushnell*, 8 Ohio St. 599, 600, 601; *State v. Dayton*, 23 N. J. Law, 49, 53.

This rule of practice seems never to have been adopted in Illinois. It is true the supreme court said in one case:

"But if it appear before the defendant has pleaded or the jury are charged, that he is to be tried for separate offenses, it has been the practice of the judges to quash the indictment, * * * *but these are only matters of prudence and discretion.*" *Thompson v. People*, 125 Ill. 256, 260 (quoting from the opinion by Buller, J., in *Young v. King*, 3 Term Rep. 106).

But, in practice, our courts of review have uniformly treated the decision of the trial court, overruling a motion to quash, as matter upon which error might be assigned. *Lamkin v. People*, 94 Ill. 501, 505; *Gunning v. People*, 189 Ill. 165, 171; *Cochran v. People*, 175 Ill. 28, 32; *McNair v. People*, 89 Ill. 441, 444, 445. It would, therefore, seem to be clearly the duty of the court in this case to quash the indictment if, as a matter of law, it is insufficient to sustain a conviction.

The state contends that under the statutes of Illinois concerning involuntary manslaughter, a conviction may be sustained upon proof of a smaller degree of negligence than was necessary thereto at common law, the contention being— as stated in the brief of the state's attorney that "at common law the negligence which resulted in death, in order to be the basis of a criminal charge of manslaughter, must have been *gross negligence;* while under the statute, negligence, in order to be the basis of a charge of manslaughter, must have

been of such character as to amount to the performance of a lawful act without due *caution and circumspection.*"

On the other hand, counsel for the defense, in their contention, go to the other extreme and urge that, in order to constitute the crime of involuntary manslaughter under the statutes of this state, the *unlawful act* committed or the *unlawful manner* of committing a lawful act, must be "unlawful" in the sense that it is in direct violation of some statute or public law of the state.

According to the contention of counsel for the state in this case, the statutory definition of involuntary manslaughter in Illinois is much broader than it was at common law; whereas counsel for the defense contend that it is narrower than at common law. Let us examine these statutes. The statutes relating to involuntary manslaughter in this state are as follows:

"Section 143. Manslaughter is the unlawful killing of a human being, without malice, express or implied, and without any mixture of deliberation whatever. It must be voluntary, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible, or involuntary in the commission of an *unlawful act,* or a *lawful act without due caution or circumspection.*"

"Section 145. Involuntary manslaughter shall consist in the killing of a human being without any intent to do so, in the commission of an *unlawful act,* or *a lawful act, which probably might produce such a consequence, in an unlawful manner.*"

The statutes as to *excusable* homicide are as follows:

"Section 152. Excusable homicide by misadventure is when a person in doing a lawful act, without any intention of killing, yet unfortunately kills another, as where a man is at work with an axe and the head flies off and kills a bystander, or where a parent is moderately correcting his child, or master his servant or scholar, or an officer punishing a criminal, and happens to occasion death, it is only a misadventure, for the act of correction was lawful; but if a parent or master exceed the bounds of moderation, or the officer the

sentence under which he acts, either in the manner, the instrument or quantity of punishment, and death ensue, it will be manslaughter or murder, according to the circumstances of the case.

"Section 153. All other instances which stand upon the same footing of reason and justice as those enumerated, shall be considered justifiable or excusable homicide.".

All four of these sections are taken from the original Criminal Code of this state, first enacted by the legislature of 1827 (Revised Laws of Illinois of 1827, pages 128, 130; sections 25, 28, 37, 38) and were embodied without change in the Revisions of 1833 (Revised Laws of Illinois, 1833, pages 175, 177, sections 25, 28, 37, 38) and of 1845 (Revised Statutes of Illinois, 1845, pages 155, 157, sections 25, 28, 37, 38); and again by the legislature of 1874, in our present Criminal Code.

Being thus all parts of the same act, they must, of course, be construed together, and so as to give effect to every part of each section, and to make one harmonious whole. In considering the true meaning and construction to be put upon them, several well-established canons of interpretation of statutes must be borne in mind. It is to be remembered that the law does not favor the repeal of the common law by implication. Nor will it be presumed that the legislature, in enacting a statute, intended to legalize acts which, by the common law, are opposed to public policy or which tend to the demoralization of society. *Swigart v. People*, 154 Ill. 284. And a statute is not to be construed as changing the common law any further than its terms expressly declare. *Can. Bank of Com. v. McCrea*, 106 Ill. 281, 289; *Cadwallader v. Harris*, 76 Ill. 370, 372.

And, so, a statute will not be construed to repeal, by implication, a rule of the common law, unless the implication is absolutely imperative. *Deatherage v. Rohrer*, 78 Ill. App. 248, 251; *Smith v. Laatsch*, 114 Ill. 271, 276, 279. Citing and quoting with approval, Potter's Dwarris on Statutes, page 185. See also *State v. Wilson*, 43 N. H. 415, 82 Am. Dec. 163, 164.

Thus it will appear that the tendency of the courts will be rather, in the absence of a clearly expressed intention of the legislature to the contrary, to construe a statute as declaratory of the common law instead of in derogation thereof; and a mere change in the phraseology is not necessarily to be construed as indicative of an intention to change the substance of the law.

Again, it is an established rule of construction that when a term or word which had a well-known common-law meaning—as, for instance, the phrases "without due caution or circumspection," "unlawful act," "in an unlawful manner"—is used in a statute, it will be understood, in the construction of the statute, in the same sense as at the common law. *Bedell v. Janney*, 4 Gilm. 193, 205, 206. And the presumption will be indulged that the same words,—as, for instance, the term "involuntary manslaughter"—are intended to have the same meaning when used in different places in the same act; and the meaning of a word or phrase may often be ascertained by reference to others with which it is associated.

In applying these principles to the construction of the statutes under consideration, it becomes important to ascertain, first, whether or not the statutes of Illinois relating to involuntary manslaughter are declaratory of the common law; or whether the common law on that subject has been abrogated in this state; and, if so, then what, exactly, is the meaning of our statutes. "Manslaughter," at common law, is defined by Blackstone, as follows:

"Manslaughter is, therefore, thus defined: the unlawful killing of another without malice, either express or implied; which may be either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act." (p. 191.)

The second branch, or *involuntary* manslaughter, differs also from homicide excusable by misadventure, in this, that misadventure always happens in consequence of a lawful act, but this species of manslaughter in consequence of an unlawful one. * * * So, where a person does *an act lawful in*

*itself, but in an unlawful manner, and without due caution* and circumspection, as when a workman flings down a stone or piece of timber into the street and kills a man, this may be either misadventure, manslaughter, or murder, according to the circumstances under which the original act was done: if it were in a country village, where few passengers are, and he calls out to all people to have a care, it is misadventure only; but if it were in London, or other populous town, where people are continually passing, it is manslaughter, though he gives loud warning; and murder if he knows of their passing and gives no warning at all, for then it is malice against all mankind. And, in general, when an involuntary killing happens in consequence of an *unlawful* act, it will be either murder or manslaughter, according to the nature of the act which occasioned it. If it be in prosecution of a felonious intent, or, in its consequences, naturally tended to blood-shed, it will be murder; *but if no more was intended than a mere civil trespass, it will only amount to manslaughter."* 4 Blackstone, Com. (Cooley's ed.), pp. 191, 192, 193.

Again, Blackstone says of excusable homicide: "Homicide *per infortunium* or misadventure is where a man, doing a lawful act, without any intention of hurt, unfortunately kills another; as where a man is at work with a hatchet, and the head thereof flies off and kills a stander-by; or where a person qualified to keep a gun is shooting at a mark and undesignedly kills a man, for the act is lawful and the effect is merely accidental. So, where a parent is moderately correcting his child, a master his apprentice or scholar, or an officer punishing a criminal, and happens to occasion his death, it is only a misadventure; for the act of correction is lawful; but if he exceeds the bounds of moderation, either in the manner, the instrument or the quantity of punishment, and death ensues, it is manslaughter at least and, in some cases (according to the circumstances) murder; for the act of immoderate correction is unlawful. * * * (p. 182). Likewise to whip another's horse, whereby he runs over a child and kills him, is held to be accidental in the rider, for he had done nothing unlawful; but manslaughter in the person who whipped him,

for the act was a trespass, and at best a piece of idleness, of inevitably dangerous consequences. And in general, if death ensues in consequence of an idle, dangerous and unlawful sport, as shooting or casting stones in a town * * * in these and similar cases the slayer is guilty of manslaughter, and not misadventure only, for these are unlawful acts." 4 Blackstone, Com. (Cooley's ed.), pp. 182, 183.

It will be observed that our statute concerning excusable homicide is copied almost word for word from Blackstone's definition of homicide by misadventure, and also that the word "unlawful" as used in these common-law definitions quoted from Blackstone, includes not merely acts which are in themselves violative of some public law, but also acts amounting to mere civil trespass; and such was the undoubted common-law acceptance of this term, as used in the law of homicide.

Bishop says, "Every act of gross carelessness, even in the performance of what is legal, * * * and every negligent omission of a legal duty, whereby death ensues," is either murder or manslaughter at common law. 1 Bishop, New Criminal Law, 8th ed., sec. 314. And, again, the same author says that the term "unlawful act" as used in the law relating to manslaughter, "is not restricted to what is indictable, but it includes what is contrary to or reprehensible under any law, civil or criminal." 2 Ibid., sec. 642, par. 2.

To the same effect, see also 1 Archbold, Criminal Pl. & Prac., pp. 209, 210, 216, 217, 219; *Regina v. Marriott*, 8 Car. & P., 425, 433. And so it was manslaughter at the common-law where the death of another occurs through the defendant's negligent use of dangerous agencies. Wharton on Homicide, par. 6. And the care required to make the killing excusable must have been in proportion to the danger. Wharton on Homicide, par. 155. But the neglect, to be "unlawful," must amount to an omission of some legal duty, not a mere neglect of a social or moral duty only.

It must be presumed, as already observed, that the legislature, in making use of the words, "unlawful," "in an unlawful manner," in these statutes, intended to employ them

in the same sense in which they were understood at common law. And the supreme court of this state has treated those sections of this same act, which define the crime of murder, as declaratory of the common law; and has cited and relied upon the common-law definitions of that crime. *Butler v. People,* 125 Ill. 641, 644, 645. And, inferentially at least, it has very recently treated the section of the criminal code defining justifiable homicide, as declaratory of the common law. *Hayner v. People,* 213 Ill. 142, 151. And in that connection has treated the word "unlawful" as including mere civil trespass, and as being used in the same sense in the statutes relating to murder as was attached to it at common law. And, at common law, our supreme court has said the word "unlawful" includes civil, as well as criminal, wrongs, and trespasses which are not positively violative of any statute, civil or criminal. *Smith v. People,* 25 Ill. 17, 24. And, in another case, the court set off the words "criminal" and "unlawful" against each other, as of different meanings. *Heaps v. Dunham,* 95 Ill. 583, 586.

It can not be presumed that the legislature intended to leave any gap or *hiatus,* on the one hand between excusable homicide and involuntary manslaughter, or on the other hand between manslaughter and murder. The section of the statute defining excusable homicide is, as appears from the quotation from Blackstone, *supra,* undoubtedly declaratory of the common law, and, as above noted, that relating to murder has been so treated by our supreme court. Those sections of this act defining the two extremes, namely, excusable homicide and murder, being thus declaratory of the common law, it must be presumed that the sections of the same act defining the middle ground of manslaughter were likewise intended to be declaratory of that law, unless the language of the act clearly forbids such presumption. The court will be the more ready to indulge this presumption in view of the rule of interpretation above noticed, that a repeal of the common law by implication is not favored.

Reading the two sections as to involuntary homicide, as quoted above, together, it appears that they practically fol-

low the wording of Blackstone's definitions of that crime, with only a slight transposition and change of the phraseology. The statute says: "Manslaughter * * * must be voluntary * * * or involuntary in the commission * * * or a lawful act without due caution or circumspection (sec. 143). Involuntary manslaughter shall consist in the killing of a human being without any intent to do so, in the commission of * * * a lawful act which probably might produce such a consequence, in an unlawful manner (sec.145). Blackstone says it is manslaughter: "Where a person does an act lawful in itself, but in an unlawful manner, and without due caution and circumspection" (4 Blackstone, Com., *supra*, p. 192).

The phrases used both in the statute and by Blackstone are practically identical, and both the statute and Blackstone treat the terms "in an unlawful manner" and "without due caution and circumspection" interchangeably. In Blackstone they are used together in the same sense, and in immediate juxtaposition. In the statute (bearing in mind that it must be presumed that the legislature meant to use the term "involuntary manslaughter" in the same sense in both sections of the statute) they are likewise used as convertible terms. The only new clause introduced into the statute consists of the words, "which probably might produce such a consequence" (sec. 145); which seem to be nothing more than a positive enactment of the established common-law rule that the unlawful act or omission, charged against the defendants, must have been the proximate·cause of the death.

It is true that the rule is stated to be: "A statute which is an entire revision of the subject is negative and repeals the common-law with which it is inconsistent." 26 Ency. of Law, 2d ed., 530; *State v. Wilson,* 43 N. H. 415, 82 Am. Dec. 163, 165; *Ill. & Mich. Canal v. Chicago;* 14 Ill. 334, 336.

But the supreme court of this state has held that the criminal code of 1845 (of which our present code of 1874 is substantially a re-enactment) was not intended by the legislature as a complete codification of the criminal laws of this state; and that the common law on that subject remains in force in

Illinois except in so far as it is expressly repealed or changed by a statute. *Johnson v. People*, 22 Ill. 314; *Smith v. People*, 25 Ill. 17, 25.

On the whole, I am of the opinion that our statutes defining the crime of involuntary manslaughter are substantially declaratory of the common law, and I will so hold. As a necessary corollary to this holding, it follows that the statute is to be construed as was the rule by the common law (26 Ency. of Law, 2d ed., p. 529), and that the court may properly resort to the common-law precedents for aid in determining whether the particular acts or omissions alleged in this indictment, fall within the definition of the crime.

*Does the indictment before us in this case sufficiently charge the offense of involuntary manslaughter within the meaning of the common-law precedent?*

It charges, in substance, that the defendant Davis was the general manager of the Iroquois Theatre and building; that defendant Noonan was business manager of said theatre and building; and that defendant Cummings was the stage carpenter of said theatre; that there were then in effect valid ordinances of the city of Chicago, requiring that in buildings of the class of this theatre, certain equipment shall be provided; that the equipment required by the ordinances was not in this theatre, that the defendants, and each of them, had the power and authority to provide that equipment and neglected to do so; that if the equipment required by the ordinances had been provided, the death of the decedent would not have occurred; that thus the defendants negligently and wilfully caused the death of the decedent. None of the sections of the ordinances, set out in the indictment, declare upon whom the duty of furnishing the equipment, thereby required, is imposed; and, in the absence of such a provision in the ordinance, it must be presumed that it was the intention of the city council to impose the duty upon the owner or lessee of the building. *Arms v. Ayer*, 192 Ill. 601, 616. And it is not averred in the indictment that either of the defendants sustained that relation to the property.

The state's attorney in his brief has quoted some other sec-

tions of the building ordinance of the city of Chicago, which he contends should be considered by the court as showing that the city council intended to impose the duty of furnishing this equipment upon the persons occupying the relation to the property which, it is alleged in the indictment, the defendants occupied in this case; and he cites several decisions from the courts of other states to the point that these sections of the ordinance would be admissible in evidence upon a trial, under this indictment, without pleading them. He argues, therefore, that the fact—or the possibility—of their existence should be considered by the court in passing upon this motion to quash the indictment.

None of the cases cited sustain the state in this contention, except two of the cases cited from Minnesota (*Faber v. St. Paul, M. & M. Ry. Co.,* 29 Minn. 465, 13 N. W. 902; *Klotz v. Winona, etc., Ry. Co.,* 68 Minn. 341, 71 N. W. 257), both of which were civil actions to recover damages for personal injuries sustained by the plaintiffs. In those cases the supreme court of Minnesota does lay down the rule that, in that state, a city ordinance is admissible in evidence in an action for damages for personal injuries, as tending to prove negligence on the part of the defendant (in connection with proof that it was violated by the defendant), even though the ordinance had not been pleaded by the plaintiff. This rule is, of course, in direct opposition to the settled law of this state, which is that the courts of Illinois do not take judicial notice of city ordinances, and that such ordinances cannot be introduced in evidence in support of an averment of negligence in common-law actions, unless the existence of the ordinance has been properly pleaded. Our supreme court has said:

"Courts do not take judicial notice of an ordinance of an incorporated town or city—and, hence, when they may be material in an action or in the defense of an action they must be specially pleaded. ❋ ❋ ❋ The pleader was not required to set out the ordinance *in hæc verba,* but he was required at least to set out the substance of the ordinance. ❋ ❋ ❋ That part of the ordinance relied upon, or all the substantial parts of the ordinance, should be set out, so that the require-

ments of the ordinance may be seen and known." *Ill. Cen. R. Co. v. Ashline,* 171 Ill. 313, 315, 316.

And this is believed to be the usual rule, in almost all the states of the union. Neither of the cases cited by the supreme court of Minnesota in the Faber case, *supra,* (29 Minn. 465, 467, 13 N. W. 902) support the doctrine announced in that case; and the Klotz case, *supra* (68 Minn. 341, 71 N. W. 257), was decided solely upon the authority of the Faber case. The doctrine of the Minnesota court is opposed to the general current of authority on this question.

It is familiar law, applicable to criminal, as well as civil, pleadings, that facts sufficient to establish the offense charged must be set out in the indictment, and that a failure in this respect cannot be aided by allegations of the conclusions of the pleader. "In every indictment, facts must be averred which, in the eye of the law, constitute the charge." *Rank v. People,* 80 Ill. App. 40, 43. It is a fundamental rule, both of civil and criminal pleading, that facts and not conclusions of law must be averred. Ibid, at pages 43, 44.

And this indictment must stand or fall by the allegations of fact appearing upon its face. It cannot be aided by any consideration of other matters, of which the court cannot take judicial notice; and, if the case were permitted to go to trial upon it, it could not be aided by the introduction of any evidence or proof of facts not properly averred in the indictment. The familiar rule of pleading applies in indictments as well as to all other common-law pleadings, that "proofs without allegations are as ineffectual as allegations without proofs." *Gunning v. People,* 189 Ill. 165, 166.

The court cannot consider any sections of the city ordinances except those properly pleaded; and under the rule of law announced by our supreme court in the case of *Arms v. Ayer, supra,* 192 Ill. 601, 616, the duty of providing the equipment required by the ordinances rested upon the owner or lessee of the building, and there is no direct averment in this indictment that that duty had ever been assumed in any way by the defendants in this case, or either of them. It is not denied by the state that the defendants cannot be found guilty of

manslaughter, on account of any alleged negligence in omitting to perform any act, unless there was a legal duty to perform that act directly imposed upon them by law—either statutory, or municipal, or by the common law—or unless they had voluntarily, by contract or otherwise, directly assumed the duty of its performance.

"It is likewise essential that the party charged must be obligated to do what he omitted to perform, by the terms of some contract, by which he is bound, or the law must have cast on him the obligation of performance." *Thomas v. People,* 2 Colo. App. 513, 31 Pac. 349, 350.

Neglect or omission, to be "unlawful," must be an omission of some legal duty—not a mere neglect of a social or moral duty. 2 Bishop, New Criminal Law, 8th ed., secs. 642, 644, 645; 21 Ency. of Law, 2d ed., p. 99   It is true that "if a man takes upon himself an office requiring skill or care if by his ignorance, carelessness or negligence, he cause the death of another, he will be guilty of manslaughter." 1 Archbold, Crim. Pl. & Prac. p. 220 (Pomeroy's ed.) p. 665.

So, the case of a mine foreman neglecting his duty and allowing fire damp to collect, whereby a fatal accident happens, has been held manslaughter; and, likewise, that of an iron founder who cast a cannon so imperfectly that it burst, with fatal results; and, for like reasons, surgeons and physicians are similarly liable for gross carelessness, whereby their patients die; but it is nowhere positively alleged in this indictment that these defendants, or either of them, ever took upon themselves the duties imposed by this city ordinance upon the owner or lessee of the building.   It is averred that each of the defendants was empowered and vested with authority to purchase, procure and furnish each and all of said apparatus, appliances and things required by said laws and ordinances to be placed in and about said building, and that said defendants "then and there negligently failed and omitted to have in and about said building, said Iroquois Theatre, and said stage, the said matters and things aforesaid, so required by said laws and ordinances of said city of Chicago aforesaid," and that said Davis "then and there had and took upon himself the

care, charge, management and control of said building, and of said Iroquois Theatre," and that said Noonan "then and there had and took upon himself the care, charge, management and control of the business of said building, the said Iroquois Theatre," and that said Cummings "then and there had and took upon himself, the care, charge, management and control of the said stage, as stage carpenter thereof." That it was then and there the duty of said defendants to "see that the said ordinances and laws" were complied with, and to then and there have in and about said stage the fire appliances, apparatus and things aforesaid mentioned and by said laws and ordinances of said city of Chicago provided and required as aforesaid, for the safety of the said persons so then and there assembled as aforesaid, to witness said theatrical performance, spectacle and play.

But this does not amount to a direct and positive allegation that the defendants, or either of them, had ever assumed or taken upon themselves the duty imposed, under this ordinance, upon the owner or lessee of the building, to furnish this equipment. It is not a *necessary* inference from the averment that the defendant Davis had taken upon himself the "care, charge, management and control of said building," and that Noonan had taken upon himself the "care, charge, management and control of the business of the building," and that Cummings had taken upon himself the "care, charge, management and control of the stage, as stage carpenter thereof," that the defendants, or either of them, had taken upon themselves the duty imposed by law, under the ordinances set forth in the indictment, of furnishing this equipment for the building. *Non constat,* but that the defendants merely assumed the management and control of the property as they found it; and did not by any contract or agreement with the owner of the building, or otherwise, specifically agree to attend to furnishing the articles or equipment required by the ordinance. The words "manage and control" would not seem necessarily, in the absence of any further averments, to include a duty to furnish equipment itself, or the fixtures of the building, without a specific agreement to

undertake those duties. The most that can be said is that it might be inferred or argued from these averments that the defendants had taken that duty upon themselves. But an argumentative averment of fact is not sufficient, in an indictment. The *facts* necessary to constitute the offense must be charged in direct and positive terms. Thus, where, in an indictment for bigamy, it was alleged in the indictment that the defendant, at the time of his second marriage, *knew* that his first wife was then living, it was held by our supreme court that this was not a positive or direct averment that the first wife was actually living on that date; and the indictment was quashed for insufficiency in this respect, the court saying:

"Reliance is placed upon the averment that the defendant, at the time of his second marriage, *knew* that his first wife was living. If this is to be taken as an allegation that his former wife was then living, it was merely argumentative. The allegation being that the defendant knew that his former wife was living, it is sought to be inferred, by way of argument, that she must have been in fact living, but it is an elementary rule of pleading, both civil and criminal, that allegations of fact in pleading should be direct and positive and not merely argumentative or inferential." *Prichard v. People*, 149 Ill. 50, 54.

And so also the indictment against Richard Gunning, formerly assessor of the town of South Chicago, was recently held insufficient by the supreme court for a similar reason, the court saying:

"The point is also made that from the allegation that Gunning offered to receive the alleged bribe to influence his official action as assessor, in reducing the assessment on the said lot (*id est*, the lot described in the indictment), it is properly deducible that, as his official action was confined to the assessment of property in the town of South Chicago, the lot must have been situated in that town. It is not permissible in pleading to leave a fact necessary to be averred to be derived by inference from an allegation of a mere conclusion of law. All necessary facts should be pleaded with reasonable certainty, and section 6, of division 11, of the criminal code

has not dispensed with that rule.'' *Gunning v. People,* 189 Ill. 165, 171.

So also in the case of *People v. Davis,* 112 Ill. 272, which was an action of debt to recover delinquent taxes, it was held on demurrer that a declaration was insufficient in law which failed to state the facts from which the liability as a conclusion of law resulted: that the averment that the property was taxable at the place in which it was assessed, was the statement of a conclusion of law and was bad on demurrer (at pp. 281, 282).

This last mentioned case was cited with approval in the Gunning case, *supra* (189 Ill. 171). The averment in the indictment in the case at bar ''that it was then and there the duty of said defendants to then and there have in and about said stage,'' the fire appliances, apparatus and things ''mentioned and by said laws and ordinances of said city of Chicago provided and required,'' is merely the conclusion of the pleader and, under the authorities last cited, is wholly ineffectual to sustain the indictment unless facts sufficient to warrant the conclusion are properly averred. See also case of *Rank v. People,* 80 Ill. App. 40, 43, 44, *supra.*

In my judgment, the indictment is not sufficient to sustain a conviction for a violation of any supposed duty imposed upon the defendants, or either of them, by the ordinances of the city of Chicago as pleaded. *It remains to consider whether it sufficiently charges the defendants with the crime of involuntary manslaughter, by reason of their neglect of any common-law duty resting upon them.*

I have already quoted the material averments of the indictment, as to the duties charged to have been assumed by the defendants respectively, and as to their violation thereof. It is nowhere alleged in the indictment that the equipment, or any part of it, required by the said ordinance, was reasonably necessary in buildings of that class, for the protection of the patrons of the theatre; nor that such equipment was usually or customarily furnished; nor are any other facts directly or positively averred tending to show that it was negligence on the part of the defendants, or either of them, aside from any

requirements of the city ordinances, to fail to provide the equipment which, it is charged, was lacking. It is true that it is averred that if the equipment mentioned and which was required by the ordinance, had been furnished the fire *could* have been easily extinguished, but this, again, if relied upon as an averment that this equipment was reasonably necessary to the safety of the patrons of the theatre, is, at most, but an argumentative or inferential statement thereof, and, as such, wholly insufficient under the authorities above cited (*Prichard v. People,* 149 Ill. 54; *Gunning v. People,* 189 Ill. 171); and again, in this aspect of the case, as in the other, the allegations of the pleader's mere conclusion that it was the duty of the defendants "to then and there have in and about said stage," the fire appliances, apparatus and things "mentioned and by said laws and ordinances of said city of Chicago provided and required," is wholly insufficient to supply the lack of averment of facts. The pleader must aver facts, not merely conclusions, in order to make the indictment good.

I am constrained to the conclusion that the indictment does not charge the defendants with any offense, either by reason of the omission of any duty imposed upon them by any ordinances of the city of Chicago averred in the indictment, nor by reason of the omission of any common-law duty resting upon them. I am, therefore, of the opinion that the indictment is insufficient and the motion to quash it should be sustained.

This view of the case renders it unnecessary to consider the other questions raised by counsel upon the argument and discussed in their briefs. It seems, however, proper to say that the question of the effect of the word "wilfully" in that part of the indictment for *involuntary* manslaughter alleging assault, which is raised by counsel for the defendants, is to my mind a serious one; and I also entertain grave doubts as to the propriety of joining these defendants in the same indictment. It is not, however, necessary to discuss or consider these questions at the present time.

In view of what has been said, I believe that the interests of the public, and of the prosecution itself, will be subserved

16

by quashing this indictment. I am convinced that no conviction that might be had upon it could be sustained upon review.

Since no statute of limitations runs against the crime of manslaughter, no serious inconvenience will be entailed upon the people by quashing this indictment. It would not, in my opinion, be right to permit a long and expensive trial to be had upon an indictment, the sufficiency of which is so questionable, or—rather—the insufficiency of which is so unquestionable, as is that of the indictment in the case at bar. The difficulties and embarrassments that beset the state's attorney in preparing an indictment in so unusual and even extraordinary a case as this, are fully appreciated. The prosecution has now, however, had the benefit of its own careful legal research preparatory to the arguments upon the motion to quash this indictment, and of the very elaborate and able briefs prepared by counsel for the defendants and, with this aid, will doubtless be in much better position to draft another and legally sufficient indictment, in case another grand jury should find that the defendants, or either of them, or any other persons, can lawfully be charged with being criminally accountable for that terrible disaster.

The motion, on behalf of the defendant Davis, to quash the indictment is sustained.

GREEN, J.:—

Through the courtesy of Judge Kersten, and the gentlemen representing the defendant in this case, I was invited to be present and listen to the arguments on the motion to quash, and was advised at the same time, that I would be furnished by counsel representing the defendants Noonan and Cummings, with printed briefs, with the understanding that in the near future I would be able to pass upon the motion to quash in the case of *The People, etc. v. Noonan* and *Cummings,* under the same indictment, supposing that a transcript of the record in that case would be filed in Peoria county, Illinois, but upon examination I have ascertained that the transcript of the record has not been filed there.

It seems to me it would be proper, under the circumstances, to devise some means whereby the order changing the venue to Peoria county as to the defendants, Noonan and Cummings, might be vacated, in which event the motion to quash in their behalf could be passed upon and determined by Judge Kersten. I will state to counsel that I have read, and heard read, the opinion of Judge Kersten in the Davis case and that I am in full accord with the views expressed by him in that opinion. In addition thereto I deem it proper to state that it is apparent to me the indictment in this case is predicated upon an ordinance of the city of Chicago set up *in hæc verba* in the indictment, that all of the alleged acts of negligence charged against the defendants, and each of them, are manifestly based upon alleged neglect of duty on their part to comply with the provisions of this ordinance. I recall one particular feature with reference to the switch in case of fire. The ordinance provides that there shall be a switch placed near the ticket office and one near the electrician's stand on or near the stage, each switch to then and there have a sign with the words as follows, to-wit: "Move switch to left in case of fire to get smoke out of building." In my judgment all of the alleged acts of negligence on the part of these defendants, and each of them, relate to, or are connected directly with, the provisions of this ordinance.

The sole object and purpose of pleading the ordinance in this case is to advise the court with reference to the provisions thereof so far as it relates to these defendants and the Iroquois Theatre building; and also, that the court might be enabled on an inspection thereof to ascertain what duties, if any, devolved upon these defendants, or either of them thereunder. It certainly does not seem to me, that the pleader in this case is warranted in the conclusion reached by him under the averments of this indictment as to the alleged duty of these defendants, or either of them. The court, upon a careful reading of this ordinance, fails to discover that it imposes any special duty upon all, or any, or either of these defendants. It certainly is not the duty of the court to criticise the indictment, or sustain a motion to quash the same, upon

mere technical grounds, and if the indictment is to be quashed it should be by reason of some substantial defect. It appears to me, that the direct and proximate cause of this terrible disaster was not brought about, or occasioned, by reason of the alleged fact that these defendants (even had the duty devolved upon them as alleged in the indictment) had not placed in said theatre building the flue pipe of sheet metal construction, the automatic sprinkler and other appliances therein enumerated, but the direct cause was the fire itself. The object and purpose of these safe-guards was to do away with the smoke in case of fire and, at the same time, provide means for extinguishing the same. It is also alleged in the indictment that a certain lighted arc lamp was being operated on the south side of the stage in said theatre during the progress of said theatrical performance therein mentioned, negligently and carelessly and without due caution and circumspection, put, placed and kept near a certain drapery which was then and there situated on, in and about said stage, by reason of which said putting, placing and keeping said arc lamp near said drapery, said drapery was then and there ignited and set on fire by said arc lamp, which said fire could then and there have been easily extinguished had there then and there been in said building, and on said stage, the fire apparatus, appliances, etc., as required by said laws and ordinances of said city of Chicago, and which said fire could then and there have been easily extinguished and put out if there had then and there been in said building, and on said stage, any portable fire extinguishers, or hand fire pumps, as provided by said ordinances.

It will be observed that there is no averment in this indictment to the effect, that these defendants, or either of them, placed, or caused to be placed, or exercised, or attempted to exercise, any control over said arc lamp; neither are they charged with negligence or lack of due caution and circumspection, relative to said lamp. Every intendment being against the pleader, the presumption is, that said arc lamp was not placed there by these defendants and that they did not, or either of them exercise, or attempt to exercise, any control

over the same. In my judgment the lack of an averment of this character is fatal to this indictment, and if *for no other reason*, the indictment, on motion to quash, should not be sustained.

In passing, I desire also to state, that it is my judgment, that there is no privity between these defendants and that a motion to quash should be sustained on the ground of a misjoinder. I realize fully how difficult it is to draw an indictment to fit the facts, or the alleged facts, in this case. It is easy to find fault with an indictment and yet more difficult to draw it. So I am inclined to hold, in addition to the reasons given by Judge Kersten, and for the reasons therein indicated, that these substantial objections to this indictment should be sustained. It does not appear to me to be proper at this time or place to pass upon the motion to quash in behalf of the defendant Noonan and Cummings, but when the case properly comes before me at Peoria, I will say frankly to counsel, that I shall not hesitate to sustain a motion to quash for the reasons herein indicated.